Madera, Appellant, *v.* Monongahela Railway
Co. et al.

Argued March 27, 1947. Before MAXEY, C. J., DREW,
LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Eugene Charles Sloan,* with him *James H. Gray,* for
appellant.

*Dean D. Sturgis,* with him *A. M. Donnan, Richard
N. Clattenburg, Joseph W. Ray, Jr.,* and *Willard H.
McEwen,* for appellees.

OPINION BY MR. JUSTICE LINN, April 14, 1947:

Plaintiff sued for restoration of seniority rights in
her employment and for an account by defendant Monon-
gahela Railway Company, alleging that she had been

deprived of such rights by fraudulent acts of defendants. Defendants denied fraud, stated the employment relationship of the parties and pleaded that, in any event, plaintiff's claim was barred by laches. From the evidence, the learned chancellor, President Judge CARR, found the facts against the plaintiff and in accord with the contentions of defendants. The court in banc dismissed the bill after hearing plaintiff's exceptions to the adjudication. The plaintiff has appealed. We must affirm the decree.

From September 24, 1917, to some time in August, 1931, plaintiff was employed by the railway company as a clerk in the freight station at Brownsville, Pennsylvania, except for two short periods when laid off temporarily. From July, 1921, to February, 1923, her employment, as well as that of other employes, was subject to a collective employment agreement by the company and the Brotherhood which was then cancelled by mutual agreement.[1] That contract had provided for seniority rights. In *Polanskey v. Monongahela Rwy. Co.*, 342 Pa. 188, 19 A. 2d 377, we observed that "it has been held that an employe 'has no inherent right to seniority in service . . . except as provided for in the contracts entered into and the rules adopted by the company relating thereto': Ryan v. New York Central R. Co., 267 Mich. 202, 255 N. W. 365."[2] Thereafter no provision on the subject existed until December 16, 1933, when, as the

---

[1] The contract provided: "This agreement shall take effect February 1st, 1922, and will continue in force thereafter until thirty days' notice in writing has been given by either party to the other requesting a change, or by mutual agreement."

[2] See generally *Elder v. N. Y. Central R. R. Co.*, 152 F. 2d 361, 364 (C. C. A. 6th) (1945) ; *System Federation No. 59 etc. v. Louisiana & A. R. Co.*, 119 F. 2d 509 (C. C. A. 5th) (1941) ; *Ooley v. Atlantic Coast Line R. Co.*, 221 N. C. 66, 19 S. E. 2d 124; *Donovan v. Travers*, 285 Mass. 167, 188 N. E. 705; *Shaup v. Grand International Etc.*, 223 Ala. 202; *Brisbin v. E. L. Oliver Lodge*, 134 Neb. 517; *McMurray v. Brotherhood of R. R. Trainmen*, 50 F. 2d 968 (W. D. Pa., 1931) ; *Hartley v. Brotherhood etc.*, 283 Mich. 201; *Llewellyn v. Fleming*, 154 F. 2d 211 (C. C. A. 10th) (1946).

court found, a "new collective bargaining contract, effective on that date and expressed as superseding the contract [referred to above] was entered into in writing between the Company and the Brotherhood as representing the clerks, store and station employes of the Company . . ." A roster of such employes showing "the seniority standing of clerks, store, and station employes was prepared and posted on April 11, 1934, and annually thereafter, with the exceptions of the years 1938 and 1941, on none of which rosters did plaintiff's name appear . . ." "The seniority ratings thereby established were agreed upon in good faith for the common benefit of the Company and the employees as a whole, and were reported to the lodge [one of the defendants] at its regular meeting on February 6, 1934."

In 1942, more than eleven years after plaintiff had been laid off and her job abolished,[3] she applied for a position as "typist-clerk"; she was appointed and on the roster was given seniority rating as of April 27, 1942, the date on which she began working. The learned court found as a fact that she applied for the position "as a new employee." She contends that seniority rights should have been granted to her as if she had been in continuous employment from September, 1917, and as if the collective employment agreement of July 1, 1921 (amended February 1, 1922) had remained in effect. "On the seniority rosters prepared and posted by the Company since that date she has been listed as entitled to seniority rating only as of April 27, 1942."

In the brief filed on her behalf it is said, "In the memorandum (Defendant's Exhibit 25)[4] of the meeting of January 19, 1923, between the management and the

---

[3] In the 4th finding of fact, to which plaintiff did not except, the learned court found that the plaintiff, on August 1, 1931, ". . . was laid off on account of slackness of work and the position she had held abolished."

[4] We assume that the reference to defendant's exhibit 25 is erroneous; counsel doubtless intended to refer to exhibit 23 which deals with the subject.

clerks it appears that the intention was to eliminate the bargaining agent by abrogating the agreement of February 1, 1922; but that there was no intention to surrender any individual benefits incident to employment which had accrued." From our examination of the evidence we think the learned court was correct in that part of the 18th finding of fact (now challenged) which, briefly summarized, finds that the first contract was terminated February 1, 1923,[5] and thereafter no contract provided seniority rights until the contract of 1933 was made. Now, in 1933, plaintiff was not employed by defendant railway company and sustained no relation to it. In the brief filed on her behalf it is said that she was "furloughed" in 1931 and therefore never was out of defendant's employ; in support of this suggestion counsel quotes a provision in the Railroad Retirement Act providing "An individual is in the employment relation to an employer if he is on furlough, subject to call for service within or outside the United States and ready and willing to serve." U. S. C. A. Title 45, section 228a (d). For several reasons the suggestion must be rejected. The learned chancellor found as a fact to which no exception was taken that her employment ceased when "the position she had held [was] abolished" in August, 1931. The word "furloughed" probably got into the record because in 1943 defendant's superintendent in writing to her said she had been furloughed in 1931. If he was then thinking of the word as defined above, he misapplied it in referring to her status in 1931, the statute first containing the definition was approved in 1935, 49 Stat. 967, 45 U. S. C. A. 215.

When plaintiff was re-employed in April, 1943, her employment was based on a new application; she then became entitled to the rights specified in the collective

---

[5] The record contains the ballot signed by plaintiff voting for representation by a committee of seven employes instead of representation by the Brotherhood in collective bargaining. (Dft. Ex. No. 1)

employment agreement effective at that time; such rights have been accorded to her.

With respect to laches we must also agree with the learned court below. Three findings of fact may be quoted: "22. During the latter part of 1934, the plaintiff called at the office of the Company looking for work, at which time she was fully informed by the chief clerk to the superintendent of the collective bargaining contract then existing between the Company and the Brotherhood, of the seniority roster that had been prepared and made effective pursuant to that contract, and she was then and there advised by him that because she had not been in the active service of the Company on January 1, 1933, and her name was not included in the seniority roster, consideration could not be given to re-employing her so long as persons whose names appeared on the roster could qualify and might apply for the same work. She also received information and advice to the same effect from the same source in 1936." Plaintiff did not except to that finding.

"23. None of the defendants had, previous to July 12, 1943, any notice or knowledge of any claim of seniority rights by the plaintiff, and since the latter part of 1934, when she received the information and advice set forth in our twenty-second finding, the position of the Company has materially changed in that it has employed and paid others to fill positions and do work for which she might have qualified.

"24. The plaintiff first joined the local lodge in July, 1942. She was not a member of the Brotherhood or of any local lodge thereof at any time previous to her re-entry into the service of the Company as a new employee on April 27, 1942, . . ."

We adopt what the learned court said with respect to those facts: "Finally, we are of opinion that the plaintiff's claim is barred by laches. As seniority rights arise only out of contract, it is appropriate that the statute of limitations should be applied by way of analogy to actions at law: Dalzell v. Lewis, 252 Pa. 283;

Bailey v. Jacobs, 325 Pa. 187; Bell v. Brady, 346 Pa. 666; Ebbert v. Plymouth Oil Co., 348 Pa. 129. If the plaintiff's seniority rights now in question were acquired under the terms of the contract of December 16, 1933, her cause of action arose when the seniority roster was finally agreed to and posted on April 11, 1934. If, on the other hand, she was entitled to seniority rights on and after February 1, 1923, then her cause of action undoubtedly arose much earlier than April 11, 1934. Yet her action was not brought until May 16, 1944.

"Aside from technical principles, her delay in instituting her action has been altogether unreasonable. She knew or had reason to know when she was laid off on August 1, 1931, that clerks junior to her were retained in the service of the Company. In 1934 her name had been dropped from the seniority roster, and in that year and again in 1936 she was refused re-employment for that reason, which was clearly stated to her. Since then the Company has employed and paid many others to fill positions to which seniority might have entitled her, and for the court to reinstate her now as a senior employee would result in great pecuniary loss and damage to the Company that would have been avoided had she prosecuted her claim with diligence."

Decree affirmed at appellant's costs.