## POLANSKY v. ELASTIC STOP NUT CORPORATION OF AMERICA.
### Civ. No. 9629.

District Court, D. New Jersey.
May 27, 1948.

Edgar H. Rossbach, U. S. Atty., and Edward V. Ryan, Asst. U. S. Atty., both of Newark, N. J., for petitioner.

Whittemore, Porter & Pollis, of Elizabeth, N. J., for respondent.

MEANEY, District Judge.

This proceeding was instituted by the petitioner to compel respondent to reinstate him to the position occupied by him prior to his induction into the armed forces of the United States, and to recover loss of wages and benefits, pursuant to the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 308.

Respondents by their answer deny petitioner's claim and affirmatively assert their change of circumstances and further contend that petitioner was guilty of laches in pursuing his remedy.

The matter proceeded to a trial, during the course of which the following facts appeared: petitioner first entered the employ of the respondent on April 21, 1941. At that time he was employed in the plating department and his occupation was designated as "plating". On February 2, 1942, apparently for reasons of health, petitioner was transferred to the "header" department, where his occupation designation was that of "operator". At that time he was paid at the rate of 70¢ per hour. In August, on an overall plant raise, his rate went to 80¢ per hour. While so employed, petitioner's service record designated him as an "operator" without further identification. Since it was of importance for the basis of his future claim for recovery, petitioner sought to show that at that date, while not so indicated, he in fact was an "A" operator, doing the requisite work and receiving the pay of such operator. The evidence, however, failed to substantiate such claim and the court is satisfied that during the period from February 2, 1942 until petitioner's subsequent induction into the armed forces on September 14, 1942, he was engaged in performing the functions of a 'B' operator, and was so considered by the respondent.

Petitioner was honorably discharged on November 10, 1945, and on December 5, 1945, within the requisite ninety day period, applied for reinstatement to his former position as an operator in the "Header" department. On December 10, 1945, petitioner was re-employed by respondent in the plating department and his occupation designated as that of "plater's helper". Petitioner continued in such employ until March 29, 1946, when he was laid off for lack of work. Petitioner was again employed by respondent as a plater's helper on August 19, 1946 in which position he stayed until February, 1947, when he quit his work with respondent. At the trial petitioner expressly waived re-employment and now seeks only money damages, such claim now being limited to the period between December 10, 1945 and December 10, 1946.

Petitioner's claim to money damages is predicated on his asserted right to employment in the cold header department between December 10, 1945 and April 5, 1946, and to an asserted right to employment as a plater from August 12, 1946 to December 10, 1946 and to the wage differentials that would have resulted had he been so employed. In each case, claim is based on the allegation that in each of the above periods, petitioner had seniority over another employee employed for the claimed periods. Since each period involves separate facts and circumstances, the claims to each will be separately examined.

Petitioner's claim to the position of operator in the cold header department turns on the claim that, for the period between December 10, 1945 and April 6, 1946, one, John Stankavish, was employed in that department as an operator A½", and that as to Stankavish, petitioner had seniority. No claim to seniority over any other "operator" is made.

Since, in the court's opinion, petitioner was not qualified to fill the position occupied by Stankavish, examination into the question of seniority is not necessary, though it may be noted that no real question in that regard was raised, it being admitted that petitioner had greater actual service seniority than Stankavish.

Petitioner's claim to the right of seniority over Stankavish and accordingly the right to reinstatement over him, assumes, of course, his qualification as an operator A½". The proofs, however, fail to prove such qualification, and the position of respondent, that petitioner lacked the qualifications, is well taken.

At the time of his induction into the armed forces, petitioner had worked as an operator in the "header" department some seven months. During the entire period, he was carried on his service record as an "operator", without further designation. From the testimony, such designation, without more, indicates that he was carried as a 'B' operator. Moreover, his wage range, while not determinative, also indicated that he was paid as a 'B' operator. The record of Stankavish, conversely shows that his entire period of employment with respondent, from June of 1941, until April of 1946, was in the header department where he progressed through various classifications, not only higher than operator 'B', but above an 'A' classification as well, though at the time of petitioner's application, Stankavish had returned to a classification of operator A½". It may be noted that, at the time petitioner made his application for reinstatement, the classification of Operator 'B' still existed, but was unfilled. The designation was subsequently done away with.

■■■ Since a veteran's right of seniority extends only to the position held at the date of induction or to a position of like seniority, status and pay, but does not extend to any position for which petitioner is not proved to be qualified, the court finds that petitioner was denied no rights to which he was entitled for the period from December 10, 1945 until April 5, 1946. There is no satisfactory proof before the court to establish petitioner as qualified to perform the work of an operator A½", or that by designation prior to his induction, petitioner had been classified by respondent as other than an operator 'B'. It may be noted additionally, that differences in classification seemingly are based on the particular skill and ability of the employee, not merely upon length of service. Hence, the court may not speculate or assume, in the absence of affirmative proof, that petitioner, had he not entered military service, would, as a result of length of service alone, have been classified as an operator 'A' on the date of his application for reinstatement.

Accordingly, no recovery will be allowed for the first period claimed.

■■■ Petitioner next claims the wage differential between the pay of a plater and that of plater's helper, the classification in which he was employed, from August 19, 1946 until December 13, 1946, as well as the pay of a "plater" for the period between August 12 to August 19, 1946.

This claim is similarly based on petitioner's assertion that, for the periods mentioned, he had seniority over one, Meiselman, who worked as a "plater" during the stated periods.

Petitioner's asserted seniority arises as a result of the Union Contract of June 13, 1946. Inferentially it may be noted that on the date of petitioner's application for reinstatement on December 10, 1945, his rights were governed by the Union Agreement of June 19, 1944. Under the provisions thereof, petitioner had lost any rights to seniority in the plating department. Such seniority as he had was then in the cold header department. Since the court has found that petitioner's former position in that department was no longer operative, his re-employment with the respondent as a plater's helper was a sufficient compliance by respondent that he be given a position of like seniority, status and pay.

Subsequently, in June, 1946, the new Union Agreement became effective, under which seniority became plant-wide being based upon all job classification. Moreover, under the agreement of June 13, 1946, petitioner, through his seniority as a header operator, could exercise seniority over "plating" operators. Accordingly, there is no question that petitioner held seniority in time over Meiselman. It must be remembered, however, that the rights claimed by petitioner to the position as "later" arose, not out of his rights under the Selective Training and Service Act, supra, but directly out of the Union Agreement of 1946. Had petitioner never left the respondent's

employ to serve in the armed forces, his claimed rights would have been precisely the same. Military service was not intended to give an advantage beyond his rights to restoration. His claim to the position of plater arose under the 1946 agreement and petitioner claimed as a member of the Union entitled to the benefits of his Union's agreement. This claim was not based on his rights as a veteran, since the respondent had previously complied with the requirements of sec. 308(b) of the Act, supra, when it restored petitioner to a position of plater's helper in December of 1945.

In order to gain the benefits of the Union Agreement under which petitioner claimed, it is axiomatic that he must satisfy the requirements thereof and that he is bound by the terms and conditions therein contained. This it is apparent petitioner did not do.

Paragraph 43 of the Agreement provided for the filing of a grievance by the Union on any filling of a vacancy where it was deemed improper; and on the failure so to file, the company action was to be deemed correct. At no time, either within the provided two day period or later, was any such grievance filed by the Union or was any determined objection raised by petitioner. At most, petitioner's testimony indicates that he "complained to the shop steward of the plant". No further complaint was indicated until the present proceeding had actually commenced, when petitioner was permitted to amend his petition to show a claim to the pay of a "plater" for the stated period. Thus, while petitioner seeks the benefits of the Union Agreement, he seeks to avoid a compliance with the requisites of it. This he may not do. The above finding is not conceived by the court to do violation to the ruling of the Supreme Court in Trailmobile Co. v. Whirls, 331 U.S. 40, at page 58, 67 S.Ct. 982, at page 991, 91 L.Ed. 1328, wherein the court stated: "For the statutory year indeed this meant that the restored rights could not be altered adversely by the usual processes of collective bargaining or of the employer's administration of general business policy."

In the case, sub judice, petitioner lost no right gained at the time he was restored to his situation as it existed when he entered the service. What he sought was additional gain under the new agreement. This conclusion makes unnecessary a determination herein as to petitioner's qualifications as a "plater".

In addition to the above, respondent has urged that petitioner is guilty of inexcusable laches, which disentitle him to any relief.

While the aforementioned findings are dispositive, brief attention will be directed to this asserted defense. The evidence discloses that petitioner was re-employed by respondent in December of 1945. He states that he objected to his status when he was first employed, but "agreed to be patient". He again objected when he resumed work in August of 1946, but no real affirmative action or objection was shown. At a late date, the precise date is unknown to the court, petitioner sought the assistance of the United States Attorney and suit was instituted on January 21, 1947, based on petitioner's claim to a position as an operator "A" in the cold header department. There is little to indicate that petitioner raised any determined objection or attempted any real effort to reach a settlement with the respondent until the institution of suit some 13 months after his re-employment. His claim to the pay of a "plater" was not actually asserted until after the commencement of these proceedings. There is nothing to indicate any effort on petitioner's behalf to enlist the aid of the Personnel Division, or to negotiate through any other of the means provided. Such delay in proceeding can in no way be attributed to respondent.

Such lack of diligence is not entitled to reward.

Accordingly, the court finds the petitioner to have been guilty of laches in pursuing his remedies. For that reason, as well as the reasons expressed supra, petitioner's claim is denied.