**Arnold R. HICKS, Plaintiff,**

**v.**

**UNITED STATES RADIATOR COMPANY, Defendant.**

**No. 13678.**

United States District Court,
E. D. Michigan, S. D.
Jan. 14, 1955.

Fred W. Kaess, U. S. Dist. Atty., Detroit, Mich., for plaintiff.

Miller, Canfield, Paddock & Stone, Detroit, Mich., for defendant.

PICARD, District Judge.

This is an action brought by a World War II veteran pursuant to provisions of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.Appendix, § 308,[1] against defendant, his former employer for

(a) damages, and

(b) reinstatement with full seniority rights.

### Findings of Fact

Plaintiff became an employee of defendant October 8, 1942 and entered the military service March 22, 1943. He was honorably discharged June 20, 1946 and according to his bill of complaint, applied to defendant for reinstatement on or about July 31, 1946, but was refused reemployment. His complaint also states that he made a second application that was refused, and this suit was started August 19, 1954, more than eight years after the first refusal.

The facts further show that during the greater part of two of those eight years plaintiff was incarcerated in prison and claims that he first knew of his rights under the Selective Training and Service Act about January, 1952, at which time he brought his case to the attention of the United States District Attorney. He also states that sometime during 1952 or 1953 he was in contact with defendant through its attorneys, at which time tentative arrangements were made for his reinstatement, but this fell through when his reemployment was opposed by the union having bargaining rights, on the ground that his reemployment would unfairly affect the seniority rights of defendant's other employees. The union has now asked to intervene to protect those "other employees."

All of these facts we accept as true for the purpose of the motion for summary judgment made by defendant, which claims that plaintiff is barred by the statute of limitations, laches, and waiver.

### Conclusions of Law

■ The Selective Training and Service Act of 1940 contains no time limitation in which those seeking to avail themselves of its benefits must institute suit but the "rules of decision" Act, Section 1652, Title 28 of the Code, provides that in the absence of such a time limit imposed by Congress, federal courts must apply state statutes of limitations. In this case the statute of limitations would be six years. This, of itself, we hold bars petitioner's action for damages. Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602.

But the question of compelling defendant to reinstate petitioner presents a different issue. In Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 532, 84 L.Ed. 754, the court said:

"But where the equity jurisdiction is exclusive and is not exercised in aid or support of a legal right, state statutes of limitations barring actions at law are inapplicable, and in the absence of any state statute barring the equitable remedy in like cases, the federal court is remitted to and applies the doctrine of laches as controlling."

While it might be contended that this is an equitable action to enforce a legal right, such is not the trend of our decisions. Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743; Russell v. Todd, supra. See also 50 U.S.C.Appendix, § 308(e).

■ So since such an action would not be barred in the State of Michigan even if the statute of limitations had expired, Tilley v. Brady, 323 Mich. 547, 36 N.W.2d 140, under our federal de-

1. Now 50 U.S.C.A.Appendix, § 459.

cisions it would not be barred in the federal court either. Holmberg v. Armbrecht; Russell v. Todd, supra.

■ Therefore on its contention that the Michigan statute of limitations controls plaintiff's rights, defendant must fail. However, regardless of the statute of limitations, plaintiff may still be barred from proceeding in this action because of "laches" or "waiver." In fact similar actions have been so barred for as short a period as thirteen months, Polansky v. Elastic Stop Nut Corp., D.C., 78 F.Supp. 74.

We are then confronted with the rule of law expressed in Moross v. Oakman, 257 Mich. 464, 241 N.W. 181:

"Where one invokes the aid of equity, after apparently sleeping on his rights for a time equal to the statutory period of limitations, he must allege facts which excuse the delay and show strong equities in his favor."

■ Let us therefore examine and analyze the facts to determine if there are any "strong equities" in favor of plaintiff beginning with the main reason given by him for his delay, to-wit, that he was in prison for two years. The answer to that is simply this— even eliminating those two years (if that theory is available to him—which we question, M.S.A. § 27.607, Comp. Laws 1948, § 609.15) there would still be more than six years when he was not in prison and when he failed to bring action.

As a matter of equity let us also admit that he was lulled into a feeling of security in 1952 to 1953 by promises that he would be reinstated. Defendant's answer to this is that plaintiff learned immediately that he was not going to be reinstated because the union would not willingly permit his return with seniority rights and still another year or more passed before suit was started.

In Moross v. Oakman, supra, the court held that petitioner must

"allege facts which excuse the delay", etc.

Here petitioner is very vague and this court is giving him the benefit of all doubts as to his possible proof. In fact, plaintiff's pleadings up to the present time leave much to be desired in the way of information. There is nothing to indicate,

(a) when he was sent to jail, or how long he served;

(b) whether he was working at the time he committed his crime since he seems to hint that his failure to get his old job back led him to violate the law;

(c) what specific promises were made, if any, to him in 1952 or 1953; and

(d) whether or not he knew that his failure to insist on his rights had prejudiced the position of his employer.

Many questions would have to be determined in his favor before he would have any standing in court at all.

On the other hand, how has defendant alleged that it has been prejudiced by the failure of plaintiff to insist upon his rights by action or otherwise, if now ordered to reinstate petitioner with seniority rights?

First, because it would be almost impossible for it to get witnesses to testify that petitioner never made application for reinstatement at any time; and

Second, that under the union rules such an act on its part would prejudice the rights of practically all its other employees with probable strikes or other labor difficulties for defendant to follow.

Now we recognize that the questions of prejudice, of laches, and waiver would ordinarily be questions of fact at a hearing, still many cases in addition to Polansky v. Elastic Stop Nut Corp., supra, have held that where a veteran fails to bring seasonable action he was guilty of laches or waiver—sometimes both, as a matter of law. Marque v. Stern, D.C., 88 F.Supp. 306; Cum-

mings v. Hubbell, D.C., 76 F.Supp. 453; Lacek v. Peoples Laundry Co., D.C., 94 F.Supp. 399.

On the state of the pleadings that are now before us we do not hesitate. This seems to be such an extreme case of lack of equities in favor of petitioner that there appears to be no reason for our failure to decide the case now.

We, therefore, hold that defendant's motion for summary judgment be granted, subject, however, to a promise by motion, to be filed within fifteen days, on behalf of plaintiff that he will offer evidence of further pertinent facts, enumerating them, and in addition to those broadly stated or hinted at in the present pleadings, which he would desire this court to consider in support of his contention that he has not been guilty of laches or waiver and that there has been no prejudice of defendant's interest.

Motion is granted.