Edward J. GALE, Plaintiff,

v.

Charles WAGG, Dr. Gordon Brain, Dr. Chambers, also known as Dr. M. S. Chambers, Hurley Hospital, State Hospital Commission, Defendants.

No. 14091.

United States District Court
E. D. Michigan, S. D.
April 13, 1956.

Edward J. Gale, Fenton, Mich., pro se.

Frank C. Smith, Flint, Mich., for Board of Hospital Managers of Flint, Mich.

Thomas M. Kavanagh, Atty. Gen. of Michigan, for Charles Wagg and Mental Health of State of Michigan.

Howard Cline, Francis J. George, Flint, Mich., for Drs. Brain and Chambers.

PICARD, District Judge.

This matter comes before us on defendants' motions to dismiss plaintiff's bill of complaint, which prays damages

"by reason of loss of income due to malicious usage by reason of the false records in the Probate Court for Genesee County, Michigan" * * * "by reason of false arrest and jeopardy thereon and by reason of illegal seizure of real estate in Fenton Township, Genesee County, Michigan and by reason of physical damage caused by assault, and malicious slander, adding to the grief described in the subject matter of this appeal for legal action and by reason of undue hardship he (plaintiff) is unable to proceed in legal action." (Parenthesis supplied.)

Reasons advanced in defendants' motions to dismiss will be discussed later herein—particularly in the conclusions of law.

### Findings of Fact.

It is very difficult to follow plaintiff's claims or his right to trial in this court.

To begin with the complaint is written in long hand and the charges are very vague and rambling (as evidenced by the prayer above) making it necessary for us to speculate as to what the intent of the pleader is, rather than what he actually states. This will be more apparent if the complaint is read. We gather, however, that on or about the 10th day of February, 1938 this plaintiff was declared mentally incompetent, was confined to Hurley Hospital at Flint for a short time and later sent to the mental institution at Pontiac, Michigan. Then in October of the same year he was released. Nevertheless, he claims in his bill of complaint that he was sane all the time and never should have been put into any kind of a mental institution but follows this by alleging that the statute of limitations does not run against him, evidently because he was legally, if not actually, insane.

Still later in the same bill of complaint he states that he regained his right

mind in 1941 and indicates that in any event the statute of limitations would not begin to run until that time.

In addition to this the records show what the bill of complaint only hints at as a fact, that he has never been declared mentally competent at any time since his confinement.

In his bill of complaint plaintiff goes on to say that he was "kidnapped" on or about the 10th day of February, 1938 by "agents of the sheriff's office" of Genesee County. He mentions no names but alleges that he was taken to Hurley Hospital and kept there. The use of the words "agents of the sheriff's office" would give grounds for legal action in this court against whomever did him the above wrong acting under color of state law, but he does not give the names of the persons who did the kidnapping nor make them parties defendant.

Later he states that Doctors Brain and Chambers finally made a diagnosis of his case and while he doesn't say so in words he does intimate that these doctors were disqualified from acting in his case under any circumstances because they were members of the Hurley Hospital staff where he was then confined. This present position of plaintiff is something we must read between the lines. He charges no conspiracy as provided in Title 8 U.S.C. § 47, now Title 42, § 1985.

Plaintiff's bill then proceeds to relate plaintiff's troubles from that day on and although he makes no connection between these incidents and the "agents of the sheriff's office" not made defendants, the doctors, nor the hospitals, the inference is that he wouldn't have had any of these troubles if it had not been for the fact that he had been declared mentally incompetent back in 1938.

He then condemns categorically the following as participants in his many legal affairs, both in and out of court, without connecting up any of them with these defendants or making any of them defendants herein,

Richard Parks and Lena Parks, his wife,

Judge Phillip Elliott of Flint,

Clifford Dye, an attorney of Fenton who was appointed guardian ad litem for him,

Maurice Matthews,

Nemo Sprange and Mary Sprange, and

Lyle Church, an attorney also appointed administrator for the Estate of Louise B. Gale, evidently plaintiff's mother.

He also criticizes the several courts with which he has come in contact during these past eighteen years, all of which, courts, judges and individuals, seemingly were at different times aligned against this plaintiff allegedly depriving him of his constitutional rights, but not saying "how".

Included in these facts we feel we should note here that when the matter was first presented to this court we realized that plaintiff should have some legal help and accordingly appointed a competent attorney to represent plaintiff, but that said attorney, after consulting with plaintiff and spending considerable time in searching for the facts and law, reported to this court that plaintiff had no cause of action of any kind, that he had been legally confined as a mental case according to the statutes of the State of Michigan, and that he, the attorney, could not go on representing him.

Nevertheless, we then granted plaintiff's petition to proceed in forma pauperis.

### Conclusions of Law.

We must proceed in our conclusions of law to discuss the legal effect of two hypotheses—

First, is the plaintiff to be classified as one mentally incompetent, or

Second, as one mentally competent?

### As One Mentally Incompetent.

Federal Rule 17(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides—

"The capacity of an individual, * * * to sue or be sued shall be

determined by the law of his domicile."

and in sub-section (c)

"If an infant or incompetent person does not have a duly appointed representative he may sue by his next friend or by a guardian ad litem."

or at least have an attorney. McCoy v. United States, D.C., 54 F.Supp. 960.

Michigan Statutes Annotated, 27.680, Comp.Laws 1948, § 612.28, provide as follows:

"Infants or incompetents as plaintiffs; next friend; guardian. Sec. 28. Whenever an infant, or a person who is insane or otherwise mentally incompetent, shall have a right of action, he shall be entitled to maintain a suit thereon, but before the declaration or bill of complaint is filed or any process issued in the name of such person who is sole plaintiff, the circuit judge or circuit court commissioner of the same county shall appoint a competent and responsible person to appear as next friend for such plaintiff, who shall be responsible for the costs of suit, and the order for such appointment shall be forthwith filed in the office of the clerk of the court in which said action is to be begun. But in case such plaintiff has a guardian of his estate, it shall be competent for such guardian to bring such action."

We believe that this court would have authority now to either make the appointment or arrange for the appointment of a guardian ad litem for plaintiff if necessary, in the interest of justice, or plaintiff can do this himself, but plaintiff evidently does not want this and refused on one occasion in the Genesee County Court to permit the guardian appointed to act. At the present time, however, there is no guardian and if the plaintiff is still mentally incompetent we can proceed no further without the appointment of one.

As One Mentally Competent.

If, however, as claimed by plaintiff, he is mentally competent, there are still several objections to his proceeding any further. One is that if he was never incompetent then his right of action against these defendants expired some time in 1940 or 1941, but if he regained his competency in 1941, the statute of limitations applying to his cause of action made two years as the time within which action could be brought.

Michigan Statutes Annotated, 27.605, Comp.Laws 1948, § 609.13

"3. Actions against sheriffs for the misconduct or neglect of themselves, or their deputies, for assault and battery, for false imprisonment, for malicious prosecution, for malpractice of physicians, surgeons or dentists, all actions for the recovery of any penalty or forfeiture on any penal statute brought in the name of the people of this state, and actions brought to charge any surety for costs, or on bond or recognizance given on appeal from any court in this state, shall be brought within 2 years from the time the cause for action accrues, and not afterwards:"

See O'Sullivan v. Felix, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980; Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602; and Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754. The distinction between equity and actions at law will be found in the last two cases and cases cited in Hicks v. United States Radiator Company, D.C., 127 F.Supp. 429.

Another point advanced by defendants is that if plaintiff had had any claim against defendant City of Flint, through its Board of Hospital Managers (Hurley Hospital) such action is now barred because plaintiff failed to file, previous to institution of suit and within the requisite period of time, a claim for damages with the City Commission of

the City of Flint. This is the usual provision to be found in City Charters and is a condition of suit against municipalities that is upheld by our courts.

Furthermore, there is no claim by plaintiff that any express statutory enactment or inference from any statute involved could be used to waive or abrogate the governmental immunity of the State of Michigan to a suit of this type in federal courts. Mead v. Michigan Public Service Commission, 303 Mich. 168, 5 N.W.2d 740.

Finally, the bill of complaint is wanting in many respects. Every bill of complaint should contain

"a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment for the relief to which he deems himself entitled." Rule 8(a), R.F.C.P.

▮▮▮ Certainly plaintiff's bill leaves much to be desired along these lines and under the circumstances this court does not believe that either equity or justice warrants its continuation of the harassment of these defendants further.

While it is our duty to give this bill of complaint sympathetic and liberal interpretation, Rice v. Olson, 324 U.S. 786, at pages 791 and 792, 65 S.Ct. 989, 89 L.Ed. 1367, which we have attempted to do to the extent of even adding allegations that were apparently foreign to what plaintiff had in mind when he began his action, nevertheless, giving such interpretations and making such additions fails to construct a complaint here that warrants prolonging plaintiff's suit against any of these defendants. Miles v. Armstrong, 7 Cir., 207 F.2d 284. See Whittington v. Johnston, 5 Cir., 201 F. 2d 810, where plaintiff was declared insane while she was in fact sane. The appointment of a guardian would merely prolong the agony.

For the above reasons we hold that the bill of complaint must be dismissed and an order to that effect should be submitted to this court forthwith.