**Allan MUSCIANESE**

v.

**UNITED STATES STEEL CORPORATION et al.**

**Civ. A. No. 69–884.**

United States District Court,
E. D. Pennsylvania.

Feb. 9, 1973.

As Amended Feb. 13, 1973.

---

Sullivan Cistone, Asst. U. S. Atty., Paul Myerson, Deputy Regional Sol., Sidney Salkin, Atty., Department of Labor, Philadelphia, Pa., for plaintiff.

Roland Morris, Duane, Morris & Heckscher, Philadelphia, Pa., for U. S. Steel Corp.

A. E. Lawson, Pittsburgh, Pa., for United Steelworkers of America and United Steelworkers of America, Local No. 4889.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

In accordance with Rule 52 of the Federal Rules of Civil Procedure, the Court makes the following findings of fact and conclusions of law, including stipulations agreed to by all parties.

1. This Court has jurisdiction over this action under the Selective Service Act of 1967, 50 U.S.C. App. § 459(d).

2. Plaintiff resides at 15 Heiser Avenue, Trenton, New Jersey.

3. Plaintiff was initially employed by defendant, United States Steel Corporation (hereinafter called "Corporation") on December 12, 1961, at the Fairless Hills Works at Fairless Hills, Pennsylvania.

4. Plaintiff worked continuously for defendant until April 14, 1964.

5. On April 14, 1964, Plaintiff left his non-temporary position with the "Corporation" as an Entry Craneman in the Cold Reduction Department, Sheet & Tin Division, for purposes of induction into the Military Service of the United States.

6. Plaintiff's unit seniority date as of April 14, 1964, was December 12, 1961.

7. Plaintiff served in the Armed Forces of the United States between April 21, 1964, until his discharge on March 2, 1966; Plaintiff received an honorable discharge and a certificate evidencing the satisfactory completion of his military service.

8. Plaintiff made timely application for re-employment with Defendant Corporation and on March 14, 1966, was reinstated to his pre-service position as an Entry Craneman, Job Class 8.

9. Within approximately one week after plaintiff had been reinstated to his pre-service position, he protested to William Riddick, General Foreman of the Cold Reduction Department, Sheet and Tin Division, that Defendant Corporation had failed to place him in a position ahead of the junior employees next in seniority and behind the Plaintiff.

10. As of March 14, 1966, the Plaintiff's company plant and unit seniority date was December 12, 1961; Plaintiff's job seniority date in the position of Entry Craneman was April 14, 1964.

11. If Plaintiff had not been absent in the Military Service between April 14, 1964, and March 14, 1966, the Plaintiff would have been awarded the Promotion to the position of Coil Feeder Helper before the junior employee next in seniority behind the Plaintiff, Jerry Eavers, who was awarded the promotion on April 17, 1965, and Plaintiff's job seniority date would be April 6, 1965.

12. As of March 14, 1966, the next junior employee, Jerry Eavers, had a job seniority date of April 17, 1965.

13. By the terms of a Collective Bargaining Agreement between the defendant and the United Steelworkers of America covering production and maintenance employees, dated September 1, 1965, and implementation by a supplementary local seniority agreement between Fairless Hills Works of Defendant Corporation and Local 4889, United Steelworkers of America, CIO, when factors of ability and physical fitness are relatively equal, then promotions are determined by length of continuous service. It is undisputed that Plaintiff's ability and physical fitness were at all times relevant hereto, relatively equal to those junior employees promoted ahead of Plaintiff.

14. Plaintiff made repeated requests to William Riddick that he be placed ahead of those co-workers who were junior in seniority to Plaintiff at the time he was inducted into the Armed Forces.

15. Such requests were not acted upon by Riddick because of adherence to the Corporation's policy which was based upon two 1955 arbitration decisions between the United States Steel Corporation and the United Steelworkers of America.

16. Plaintiff was a member of United Steelworkers of America, Local 4889, which was affiliated with the United Steelworkers of America.

17. On or about March 14, 1966, Plaintiff consulted Frank Dzurinko, President of Local 4889, regarding his seniority grievance.

18. Plaintiff made repeated and persistent requests to Mr. Dzurinko from March, 1966, until June, 1966, regarding his seniority grievance.

19. Mr. Dzurinko did not process any grievance for Plaintiff but did suggest he talk to William Murphy, Plaintiff's Assistant Grievance Committeeman.

20. In late March, Plaintiff spoke to Mr. Murphy about his grievance; Mr. Murphy told Plaintiff that he could not help him because of company policy.

21. Plaintiff continued to make repeated requests of Mr. Murphy that his grievance be processed because his rights were being violated.

22. In June, 1966, Plaintiff discussed the matter of his seniority grievance with Jack Donnell, an Assistant Grievance Committeeman for an area other than Plaintiff's. In February, 1967, Mr. Donnell attempted to help Plaintiff by showing him a pamphlet concerning the re-employment rights of veterans generally.

23. Plaintiff was unaware of his re-employment rights under Section 459 of the Selective Service Act of 1967 prior to his reading of the pamphlet shown to him by Donnell in February, 1967.

24. In March, April and May of 1967, Mr. Donnell and Plaintiff met with Robert J. Lau, Supervisor of the State of New Jersey Department of Conservation and Economic Development, Division of Veterans Services in Trenton, New Jersey, to discuss Plaintiff's grievance.

25. As a result of these discussions, Plaintiff filled out an OVRR form 100 at Mr. Lau's office in the presence of Mr. Donnell, and forwarded the same to Dow E. Walker, Regional Director of the Veterans Re-employment Bureau, U. S. Department of Labor in New York.

26. On June 22, 1967, William J. George, Field Representative of Dow E. Walker, sent the Corporation a letter apprising it of the existence of Plaintiff's formal grievance in the hands of the Department of Labor and further, sought the Corporation's position regarding Plaintiff's seniority grievance.

27. On July 17, 1967, D. W. Criswell, Staff Supervisor, Employment and Placement, United States Steel Corporation, wrote an explanatory letter to Mr. Robert C. Stevens, Regional Director, U. S. Department of Labor, Office of Veterans Re-employment Rights, responding to Mr. Stevens' letter of July 3, 1967 and Mr. George's letter referred to above.

28. Mr. Criswell's letter stated in short that company policy and the agreement with Local 4889 would not permit a retroactive adjustment of Plaintiff's seniority.

29. Section 15 of an agreement dated September 1, 1965, between the United States Steel Corporation and the United Steelworkers of America required the Corporation to accord to each employee who applies for re-employment after conclusion of his Military Service with the United States, such re-employment rights as he shall be entitled to under then existing statutes.

30. On March 23, 1968, Plaintiff was awarded a promotion to the position of Coil Feeder Helper, Job Class 6, with a job seniority date of March 23, 1968.

31. The Complaint herein was filed April 24, 1969.

## DISCUSSION

By agreement of all parties to this action, the only real issue presented to the Court for determination is whether or not Plaintiff is guilty of laches.

The doctrine of laches is an equitable doctrine based on public policy which requires the discouragement of stale demands. Laches is not a mere lapse of time but is principally a question of the inequity of permitting a claim to be enforced where some change in condition has taken place which would make enforcement of the claim unjust. See Penn Mut. L. Ins. Co. v. Austin, 168 U.S. 685, 18 S.Ct. 223, 42 L.Ed. 626 (1898). A complainant must not delay an unreasonable period of time in enforcing a known right. See Hays v. Seattle, 251 U.S. 233, 40 S.Ct. 125, 64 L. Ed. 243 (1920). The determination of what constitutes an unreasonable delay is one which is necessarily left in the hands of the Court and is based on the facts presented.

The unreasonable delay in asserting a known claim is analogous to a waiver in that both are in a sense relinquishments of known rights, one by commission and the other through omission.

Where laches is asserted as a defense, the Federal Courts will generally look to the analogous state statute of limitations for guidance in determining what is a reasonable period of time in which to process a claim involving a similar issue at law.

"A court of equity is not bound by the statute of limitations, but, in the absence of extraordinary circum-

stances, it will usually grant or withhold relief in analogy to the statute of limitations relating to actions at law of like character. Under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute, but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the analogous statute, a court of equity will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the complaint or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches. On the other hand, when the suit is brought after the statutory time has elapsed, the burden is on the complainant to aver and prove the circumstances making it inequitable to apply laches to his case." Shell v. Strong, 151 F.2d 909, 911 (10th Cir. 1945). See also, Leonick v. Jones & Laughlin Steel Corp., 258 F.2d 48 (2d Cir. 1958).

Some confusion has arisen in the cases dealing with returning veterans as to what analogous cause of action at law is created under the federal statute. Congressional intent is likewise unclear because no reference is made in the legislative history or in the statute itself regarding the length of time in which a veteran must assert his rights under the statute.

The Second Circuit in Leonick v. Jones & Laughlin Steel Corp., *supra*, affirmed the District Court's granting of Summary Judgment on the ground that plaintiff was barred by the analogous statute of limitations. The District Court correctly applied a six year period of limitation in "an action to recover upon a liability created by statute, ex-

cept a penalty or forfeiture," because the rights of the returning veteran are created by statute. However, in Blair v. Page Aircraft Maintenance, Inc., 467 F.2d 815 (5th Cir. 1972), the Fifth Circuit characterized the statutory right to re-employment as being tortious in nature and applied a one year period of limitation which barred plaintiff's claim for lost wages under the Act.

■ This Court is of the opinion that if the doctrine of laches or a statute of limitations applies at all, the rights of the returning veteran are contractual in nature and that the federal statute creating the right to re-employment is a part of the veteran's employment contract with his employer.

■ Employment rights and seniority rights arise out of contract and not tort. The Supreme Court of Pennsylvania in Madera v. Monongahela Railway Co. et al., 356 Pa. 460, 52 A.2d 329 (1947) adopted the conclusions of the trial court with respect to the analogous statute of limitations applied to the employment issue involved therein:

". . . As seniority rights arise only out of contract, it is appropriate that the statute of limitations should be applied by way of analogy to actions at law: . . ." (citations omitted). Madera v. Monongahela Railway Co. et al., 356 Pa. 460, 464, 52 A.2d 329, 332 (1947).

It would certainly be logical that loss of wages arising out of a disputed employment situation should likewise be treated as having arisen out of contract and not tort. The important feature of the 1967 Act in the case of the returning veteran is that the re-employment provisions only come into play where the veteran was previously employed under an employment contract existing at the time of his or her departure. Section 9(c)(2) operates as an option clause which is written into every veteran's employment contract and which we will assume was bargained for in Congress when the Act was passed. In addition, it would seem to this Court that the lim-

itation period applied should be the same for all rights posited on the employer-employee relationship whether or not created by statute. Certainly a veteran should have no less time to bring suit to enforce this right than he would have if it were merely the product of a private bargain. The policy under the Selective Service Act demands nothing less. Under Pennsylvania law, plaintiff would have six years in which to bring an action arising out of contract. See, 12 Purdon's Pa.Stat.Ann. § 31 (1953).

 ˌ Here, plaintiff was discharged from the military in March, 1966, and filed this suit on April 24, 1969. Thus at law plaintiff would not be barred from prosecuting his claim, and we likewise will not preclude assertion here on the theory of laches under the rule quoted above. Shell v. Strong, *supra*.

The Court has determined that Plaintiff made repeated and persistent demands to certain management and union representatives from March, 1966, to June, 1966. Each demand was ultimately rejected on the basis of two 1955 arbitration decisions between the Corporation and the United Steelworkers of America which dictated company policy regarding Plaintiff's grievance. This position as to retroactive seniority status has since been emasculated by District Judge Sorg's decision in Foremsky v. United States Steel Corporation et al., 297 F.Supp. 1094 (D.C., 1968). Plaintiff was not aware of his specific federal re-employment rights under the Selective Service Act of 1967, until he came into the possession of a pamphlet explaining such rights in February of 1967. Thereafter in March, April and May of 1967, Plaintiff met with Robert J. Lau, Supervisor, New Jersey Division of Veterans Affairs, Department of Conservation and Economic Development, to discuss Plaintiff's rights under the federal statutes. On May 11, 1967, Plaintiff filled out and mailed an OVRR–100 grievance form to Dow E. Walker, Regional Director of the Veterans Re-employment Bureau, U. S. Department of Labor. Thereafter, the matter was in the Government's hands. After several attempts by the Labor Department to settle the case amicably in June of 1967, suit was instituted by the Government on behalf of Plaintiff on April 24, 1969.[1]

On the basis of Plaintiff's repeated and persistent conduct in pursuing his claim, and in view of Defendant Corporation's adherence to a policy which contravened the case law since Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946) as well as Section 9(c)(2) of the Selective Service Act of 1967 in which the "escalator principle" of *Fishgold* is enunciated, the Court finds that Plaintiff is in no way guilty of laches.

> . . . [H]e [the veteran] does not step back on the seniority escalator at the point he stepped off. He steps back on the precise point *he would have occupied had he kept his position continuously during the war* . . . .. (emphasis supplied)

> . . . This legislation is to be liberally construed for the benefit of

---

1. Although the issue is not directly raised by the facts of this case, it would seem to this Court that, insofar as it is proper to apply a state statute of limitations to a case containing mixed elements of law and equity such as the one at bar, the statute should be regarded as tolled at the point when the government enters into negotiations with the employer to enforce the employee's rights. If we were to adopt the view that the statute would not be tolled until the filing of the suit, it would hinder the ability of the government to resolve these cases by amicable negotiations instead of by litigation. While the rights of the plaintiff might be affected if the government were dilatory in its negotiations, we do not think that a plaintiff should lose rights by the extension of good faith negotiations past the limit of the statute adopted by analogy. In this regard, it should always be remembered that such cases are best conceptualized as largely equitable in nature, and a court, therefore, has some flexibility in its application of state statutes of limitations adopted by analogy.

those who left private life to serve their country in its hour of great need. (citation omitted). And no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275 at 285, 66 S.Ct. 1105 at p. 1111, 90 L.Ed. 1230 at p. 1240 (1946).

Several courts have dealt with the concept of laches as it applies to the returning veteran, and the opinions therein appear to treat the operation of the doctrine as being tantamount to a waiver.

In the case of Carmalt v. General Motors Acceptance Corp., 302 F.2d 589 (3rd Cir. 1962), which is cited as support for Defendant's position, Circuit Judge Goodrich held that in addition to a 17 year delay in bringing suit, Plaintiff had abandoned his claim by agreeing with Defendant's remarks that he had been discharged from the Armed Forces with mental disabilities. See, Smith v. Missouri Pacific Trans. Co., 313 F.2d 676 (8th Cir. 1963) (Blackmun, J.) (Plaintiff thereafter worked for other employers.).

Each case cited in *Carmalt* was an alternative holding. See, Marque v. Stern, 88 F.Supp. 306 (M.D.Pa., 1950) where the District Court made a finding that complainant was not in a permanent position prior to induction into the military but had actually been released from his work by his defendant employer for unsatisfactory performance. Complainant had also worked for other employers for a period of nine months after his discharge. In Cummings v. Hubbell, 76 F. Supp. 453 (W.D.Pa., 1948), complainant was honorably discharged on September 2, 1944, and the Court found that he did not make demand for re-employment to his former employer until February, 1946. Not only did Plaintiff fail to demand re-employment within the 90 day period provided for in the Act, but there was evidence which tended to show that Plaintiff had abandoned his claim by accepting Defendant's refusal to re-employ him.

In Polansky v. Elastic Stop Nut Corp., 78 F.Supp. 74 (D.N.J., 1948), complainant brought suit only for damages for the period of one year after his discharge, during which time he was employed by Defendant in a capacity other than the one he had left when he joined the service. The Court found complainant did not qualify for the job position "Operator A ½" which he sought because he lacked the requisite ability. Complainant also had switched departments prior to induction which resulted in a loss of seniority under the union agreement in force at that time. The Court did indicate as an additional ground for denying Plaintiff relief that he was guilty of laches.

Each of the above discussed cases was an alternative holding and all except *Polansky* indicated that complainants in those cases had effectively abandoned their claims or had acquiesced in their employer's decision not to correct their grievances. This indicates that where laches alone is asserted as the only defense as here, a strong showing of unreasonable delay is required in order to deny Plaintiff his re-employment rights under the Selective Service Act. See, Smith v. Missouri Pacific Trans. Co., *supra.*

### DEFENDANTS' CONDUCT

The only prejudice to defendant Corporation is that it paid another individual to do the work Plaintiff would have done had Plaintiff been employed in the higher position. Certainly prejudice to the Defendant is an important element to be considered in reaching a final determination on the laches issue. But the prejudice here was created by the Defendant Corporation's own doing because it assumed the risk of relying on two erroneous arbitration decisions in formulating its policy. Both the decisions and Defendant's corporate policy relating to this matter flew directly in the face of Section 9(c)(2) of the 1967 Act. See, Foremsky v. United

**1402**

States Steel Corp. et al., *supra*. Also, Section 15 of an agreement between the Corporation and Local 4889 which was in effect in 1966 stated that the Corporation was to accord to each employee who applied for re-employment after conclusion of his Military Service with the United States, such re-employment rights as he shall be entitled to under then existing statutes. Thus the Corporation not only violated the statute by failing to grant Plaintiff retroactive seniority status, but it violated its agreement with the Union by mis-stating to Plaintiff that he had no right to move ahead in seniority. The requirement that the parties have "clean hands" in order that the Court may do equity is not as strictly applied as it once was, but the doctrine is still valid as a measure of the reasonableness of a party's actions in considering the overall equities in a given case. Here the Court is of the opinion that the Corporation and to some extent the Union, do not have "clean hands" because they contributed to the time delay asserted as a defense herein. The Court feels that Plaintiff acted in a way in which a reasonable man in his position would have acted and is not guilty of laches.

 Defendant makes the further argument that those employees with job seniority dates senior to Plaintiff who were junior to him prior to his induction will now be "bumped" down because Plaintiff has a new job seniority date. First, the Corporation cannot assert the possible prejudice of a third party to sustain its laches defense, see, Bostick v. General Motors Corp., 161 F. Supp. 212 (E.D.Mich.1958) but even if it could, these employees have no vested right to a senior position which violates Plaintiff's rights under Section 9 of the Selective Service Act of 1967. See, Whitmore v. Norfolk & Western R. R. Co., 73 LRRM 2001 (N.D.Ohio, 1969). Employees generally must expect to be bumped in future cases of seniority adjustment if we are to enforce the law as written.

The nature of the equitable relief sought here does require the trial Court to exercise its sound discretion in reaching its decision. The Court is convinced that Plaintiff made a diligent attempt to assert his right to re-employment and that he should not be precluded from asserting his claim. Any other result would be unfair to Plaintiff.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction of the action and the parties.
2. Plaintiff is not guilty of laches.
3. Plaintiff is entitled to have his job service date changed to April 6, 1965, as per the stipulation agreed to by the parties.
4. Plaintiff is entitled to compensation for loss of wages from March 14, 1966, to be computed in accordance with the stipulation of the parties.