## FEORE v. NORTH SHORE BUS CO., Inc.
### No. 213, Docket 20515.

Circuit Court of Appeals, Second Circuit.
May 13, 1947.

Jacob I. Goodstein, of New York City, for defendant-appellant.

Knowlton Durham, of New York City, for plaintiff-appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff, an honorably discharged veteran of World War II, is suing his employer

under §§ 8(b) (B), (c) of the Selective Training and Service Act of 1940, 50 U.S. C.A.Appendix, §§ 308(b) (B), (e), for loss of wages resulting from defendant's alleged failure to restore him to his prewar position or a position of like seniority, status, and pay. The only one of the three defenses offered which, in our view of the case, we need discuss here is that defendant in fact offered plaintiff such a position. The District Court gave judgment for plaintiff, D.C.,E.D.N.Y., 68 F.Supp. 1014, and defendant appeals.

Before the war, plaintiff had been a bus driver in the employ of defendant. The bus runs available to the drivers varied in desirability because of such factors as the time of day of service, e. g., weekday mornings as against night or Sunday operation, and absence of "swings" or waiting periods between portions of the day's runs. Drivers were assigned regular runs; when one failed to appear for work, his place was taken by a driver on an "extra list" maintained for that purpose. To assure fair distribution of the preferred runs, drawings or "picks" were held, pursuant to both pre- and postwar union labor contracts, at approximately three months' intervals. Priority of choice at these picks was determined by seniority in service, and either a regular run or assignment to the "extra list" could be selected. Those drivers selecting the extra list at the quarterly pick selected their runs each morning from those made available by the failure of drivers holding regular runs to appear for work. Under the union contract, however, drivers of regular runs were paid for not less than 8 hours per day, 48 hours per week, while extra operators were guaranteed only 42 hours of work per week.

Plaintiff was separated from the armed services on July 14, 1945. He did not ask for restoration to his old position until October 11, 1945—89 days later. By this delay he missed the regular quarterly pick held early in September. He worked on October 12, and then took a vacation until October 24. When he returned from his vacation he demanded his immediate choice of any run held by a driver having less seniority than he. This would have in-volved "bumping" that driver or, in other words, depriving him of his run. The displaced driver would then have had the right to bump any driver junior to him, and so on down the seniority line. As plaintiff stood 21st among 220 drivers, the dislocation thus caused would obviously have been extensive. Defendant refused this demand and instead offered plaintiff a place on the extra list, where because of his seniority plaintiff would have first choice each day. At the next quarterly pick, scheduled for January, plaintiff would have had priority of choice commensurate with his seniority. Plaintiff rejected this offer and defendant gave him a notice of discharge. Plaintiff participated in the January pick, however, and resumed work satisfactory to him on January 7, 1946. The wages he would have earned on a regular run between October 24, 1945, and January 7, 1946—$501.60—are the subject of his claim and of the award below.

Although counsel have not raised the point, we must first decide the issue of federal jurisdiction to entertain a suit for back wages only by a veteran who has in fact been restored to his old position. Sec. 8(e) of the statute empowers the district court "to specifically require such employer to comply with such provisions, and, as an incident thereto, to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action." The "such provisions" referred to are those of subsections (b, c) requiring the employer to restore the veteran to his previous position or one of like seniority, status, and pay. It might be urged that this wording confers jurisdiction upon the court to award back pay only with, and as a part of, an order compelling the employer to restore the veteran to his required position. But such a suggestion overlooks the fact that the payment of wages is a part of any employment relationship. The grant of the power to compel restoration from the date of the original demand therefore itself confers power to compel the payment of wages which the veteran would have earned under such restoration. Moreover, we must construe the Act liberally to effectuate the

554

congressional purpose of insuring that the returning veteran be not penalized employmentwise because of his military service. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230. Hence the District Court was correct in concluding that it had jurisdiction. See also Hall v. Union Light, Heat & Power Co., D.C.,E.D.Ky., 53 F.Supp. 817.

■ On the merits we hold that upon plaintiff's return defendant offered him a position of seniority, status, and pay similar to his prewar job. Among the conditions of plaintiff's prewar job were the union contract and the seniority and quarterly pick systems. He had no cause for complaint under the statute when these same conditions were present in the postwar job offered him. Grubbs v. Ingalls Iron Works Co., D.C.,N.D.Ala., 66 F.Supp. 550. Sec. 8(c) of the Act requires that the veteran be considered as on furlough or leave of absence during his period of training and service. The contract in force when plaintiff returned provided means by which an employee who was sick or on leave of absence could participate in a pick, in default of which he went on the extra list. Plaintiff did not allege or prove that he availed himself of this method. Nor has he showed that it was less favorable to absentees than the practice in force when he entered military service. One of these showings was necessary to his claim of improper treatment. The practice of bumping, which would have been necessary if plaintiff's demand had been granted, was not a condition of his prewar position. Indeed, during the period of his prewar employment his union had discussed bumping and voted practically unanimously against its adoption. Had defendant acceded to plaintiff's demand the union quite possibly would have felt compelled to adopt punitive measures for the violation of its contract. Had there been a long delay between picks, possibly a question might arise as to whether the Act and the contract were not fundamentally inconsistent; but certainly here the periods were too short to raise such a question.

If plaintiff had accepted defendant's offer of the number one position on the extra list, he could have earned as much as he would have earned on a regularly assigned run, and at times comparably desirable to such assigned runs. The District Court specifically found this as a fact, basing it upon the runs which were actually available to the top man on the extra list during the interval. Plaintiff urges that he could not know this in advance because it could not be predicted which runs would be available to men on the extra list. And he asserts that the statute is absolute in terms and places no duty upon him to mitigate damages by accepting a position of lesser status. But, without deciding this issue, we point out that the pay which the statute guarantees to the veteran is the pay of his job, subject to all its conditions. Thus, if bumping were a condition of his job, he could not complain if he were bumped to a lower paying run by a returning veteran with more seniority than he. Hence, under the conditions in fact prevailing, he could not have complained, had he been relegated to a possibly lower paying position on the extra list because of failure to participate in a quarterly pick. The fact that actually he would have lost nothing was an added gain beyond the statutory guarantee.

■ The purpose of § 8 is to insure that the veteran "does not lose ground by reason of his absence." Trailmobile Co. v. Whirls, 67 S.Ct. 982, 990, quoting Fishgold v. Sullivan Drydock & Repair Corp., supra, 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 123. This purpose the defendant's offer satisfied. It is not without significance that about 120 veterans who returned to defendant's employ before plaintiff all accepted similar offers. Plaintiff's claim for payment during his period of voluntary idleness does seem to us extreme and beyond any intent of the statute.

Reversed for judgment for the defendant.