## HARRISON v. SEABOARD AIR LINE R. CO.

C. A. No. 1784.

District Court, E. D. South Carolina, Columbia Division.

May 10, 1948.

Zach McGhee, and D. McK. Winter, both of Columbia, S. C., for plaintiff.

J. B. S. Lyles, of Columbia, S. C., and Norman S. Elliott, of Norfolk, Va., for defendant.

WYCHE, District Judge.

This action arises under Section 8 of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 308, and was brought by plaintiff, a World War II veteran, against the defendant to enforce the re-employment provisions of the Act.

The facts in the case have been stipulated by the parties and are not in dispute. Plaintiff entered the employ of defendant's predecessors on May 29, 1944, as a student telegraph operator, and was promoted to telegraph operator on June 13, 1944, with seniority as of that date. After plaintiff's promotion he attached himself to Extra Board No. 3 of Seniority District No. 2 on defendant's railroad. In such work plaintiff held no regular assignment under the collective bargaining contract between the craft to which plaintiff belonged and the railroad, but bid in such jobs from time to time as plaintiff desired and to which his seniority entitled him. Plaintiff remained in the employ of defendant's predecessors, working from the extra board, until May 4, 1945, when plaintiff was called into the armed forces pursuant to the Selective Training and Service Act.

Plaintiff entered the armed forces on May 11, 1945, and completed his period of training and service on June 16, 1946. Within the statutory period plaintiff made application to defendant for re-employment under the provisions of Section 8 of the Act, and was re-employed by defendant as a telegraph operator attached to Extra List No. 3 of Seniority District No. 2 on August 9, 1946, with seniority dating from June 13, 1944, the date of plaintiff's original employment by defendant as a telegraph operator. In addition defendant gave plaintiff the benefit of all general wage increases which had taken place in plaintiff's craft while he was in the armed forces. That job was the same job which plaintiff had held when plaintiff entered the armed forces.

Plaintiff continued in the employ of defendant as telegraph operator attached to Extra List No. 3 of Seniority District No. 2 from August 9, 1946, to April 7, 1947, when, following a hearing and investigation held under the collective bargaining contract, hereinafter referred to, plaintiff was discharged by defendant for cause. Plaintiff's contention in this case is that upon his return from the armed forces he was entitled to a position with the defendant which had been filled in accordance with the terms of the collective bargaining contract while plaintiff was in the armed forces.

When plaintiff entered the armed forces in May, 1945, and at the time plaintiff returned to the employ of defendant, the Order of Railroad Telegraphers was the exclusive bargaining agent of the craft to which plaintiff belonged, duly selected pur-

suant to the Railway Labor Act, 45 U.S. C.A. § 151 et seq. There was in force at such times between the Order of Railroad Telegraphers and the defendant a collective bargaining contract which provided in part as follows: "Seniority is effective when a vacancy occurs, when an additional position is created, when a position is abolished or when an employee is displaced in the manner as provided for hereinbelow." This contract further provided that: "Employees inducted into military service will, upon return to railroad service, take the position held at the time inducted into military service unless, in the meantime, claimed by a senior man account of reduction in force or position is abolished, in which event employees may exercise seniority as follows: * * * (3) Employees on the extra board at the time of induction into military service will exercise seniority as provided in paragraph (1), Rule 15 of the current agreement." Paragraph (1), Rule 15 of the current agreement referred to above provided: "When a temporary position, described in paragraph (1) of this Rule, is terminated, or when an extra board employee is displaced by a senior employee, employees thus affected may, within ten (10) days displace any junior employee assigned to such extra board positions."

Sometime after plaintiff had been reemployed by defendant as a telegraph operator attached to Extra List No. 3 of Seniority District No. 2 plaintiff requested defendant to transfer him to the position of telegraph operator on swing job No. 12. That position included three positions at Camden, one at Blaney, one at Weddell, one at Elmwood and one at Cassatt, South Carolina, and was occupied by O. E. Branham, a telegraph operator whose seniority on Seniority District No. 2 dated from December 12, 1944. During the time that plaintiff was in the armed forces, swing job No. 12 became vacant and was posted for bids in accordance with the terms and conditions of the collective bargaining contract. It was bid in by Branham. Defendant refused to permit plaintiff to displace Branham on swing job No. 12 because plaintiff was employed on the extra board when plaintiff entered the armed services, and under the collective bargaining con-

tract between defendant and the Order of Railroad Telegraphers seniority is effective only (a) when a vacancy occurs, (b) when an additional position is created, (c) when a position is abolished, or (d) when an employee is displaced in the manner provided in the contract. None of such events had occurred, and defendant took the position that plaintiff was not entitled to displace Branham on swing job No. 12 either under the collective bargaining contract or under the Selective Training and Service Act. After plaintiff was discharged by defendant, plaintiff brought this suit to recover from defendant the difference between the earnings which plaintiff was paid by defendant after plaintiff was reemployed and the earnings to which plaintiff would have been entitled had he been given swing job No. 12.

I have carefully considered the collective bargaining contract between the defendant and the Order of Railroad Telegraphers which covered the craft to which plaintiff belonged to determine if there are any provisions in such contract which conflict with the Selective Training and Service Act. After a very careful analysis of that contract, I am unable to find any conflict between it and the Selective Training and Service Act, and the plaintiff has been unable to convince me that there is any conflict between them. Section 8(b) of the Selective Training and Service Act required defendant to restore plaintiff "to such position (the position held by plaintiff at the time of his entry into service) or to a position of like seniority, status, and pay", and Section 8(c) of the Act provided that upon restoration of the plaintiff to such position he "shall be considered as having been on furlough or leave of absence during his period of training and service * * * (and) shall be so restored without loss of seniority."

■■ The facts in this case show conclusively that the defendant restored the plaintiff with seniority unimpaired to the position which plaintiff held with defendant at the time he entered the armed services. By such action the defendant fulfilled its obligations to plaintiff under the Selective Training and Service Act because, in the words of the Supreme Court

514

in Fishgold v. Sullivan Corp., 328 U.S. 275, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230, 167 A.L.R. 110, plaintiff did "not step back on the seniority escalator at the point he stepped off", but he stepped "back on at the precise point he would have occupied had he kept his position continuously during the war."

The seniority which plaintiff held with defendant was derived under the collective bargaining contract between defendant and the Order of Railroad Telegraphers which represented plaintiff's craft. The privileges which such seniority entitled plaintiff to exercise are set forth and defined in that contract. It is clear that plaintiff could exercise seniority only in accordance with that contract so long as it did not conflict with the Selective Training and Service Act and no conflict exists between the two. The Act does not define how seniority shall be exercised; it leaves that to the labor contract negotiated between the employer and the employees' bargaining agency. In this instance the contract provided that seniority shall be effective when a vacancy occurs, when an additional position is created, when a position is abolished, or when an employee is displaced in the manner set out in the contract. Admittedly none of these events had occurred; therefore, plaintiff was not entitled to displace Branham on swing job No. 12. Furthermore, under the contract, plaintiff, as an employee working from the extra board at the time of his induction into the military service, could exercise his seniority only when a temporary position was terminated or when an extra board employee was displaced by a senior employee. The position which Branham had bid in while plaintiff was in the armed forces was not a temporary position, but a regular position. Nor had plaintiff been displaced in his job by Branham; on the contrary, he is seeking to displace Branham in a manner not permitted by the contract or the Selective Training and Service Act.

The Selective Training and Service Act does not sweep aside a seniority system established by a collective bargaining contract. It relies upon such contracts in order to secure to veterans the rights which it guarantees. In Fishgold v. Sullivan Corp., 328 U.S. 275, at pages 287, 288, 66 S.Ct. at page 1112, supra, the Supreme Court said: "The 'position' to which the veteran is restored is the 'position' which he left plus cumulated seniority. * * * Congress recognized in the Act the existence of seniority systems and seniority rights. It sought to preserve the veteran's rights under those systems and to protect him against loss under them by reason of his absence. There is indeed no suggestion that Congress sought to sweep aside the seniority system. What it undertook to do was to give the veteran protection within the framework of the seniority system plus a guarantee against demotion or termination of the employment relationship without cause for a year."

This case is very similar to Feore v. North Shore Bus Co., 2 Cir., 161 F.2d 552, which involved the right of a returning veteran to set aside job assignments made under a collective bargaining contract while the veteran was in the armed forces. In that case the court said, 161 F.2d at page 554: "On the merits we hold that upon plaintiff's return defendant offered him a position of seniority, status, and pay similar to his prewar job. Among the conditions of plaintiff's prewar job were the union contract and the seniority and quarterly pick system. He had no cause for complaint under the statute when these same conditions were present in the postwar job offered him. Grubbs v. Ingalls Iron Works Co., D. C. N. D. Ala., 66 F. Supp. 550. Sec. 8(c) of the Act requires that the veteran be considered as on furlough or leave of absence during his period of training and service. The contract in force when plaintiff returned provided means by which an employee who was sick or on leave of absence could participate in a pick, in default of which he went on the extra list. Plaintiff did not allege or prove that he availed himself of this method. Nor has he showed that it was less favorable to absentees than the practice in force when he entered military service. One of these showings was necessary to his claim of improper treatment. The practice of bumping, which would have been necessary if plaintiff's demand had been granted, was

not a condition of his prewar position." See also, Grubbs v. Ingalls Iron Works Co., D.C.Ala., 66 F.Supp. 550.

Plaintiff bases his right of recovery in this action on the theory that Branham, a junior employee, bid in a job while plaintiff was in the armed services and that plaintiff should be entitled to that job because plaintiff's seniority was greater than that of Branham. Plaintiff's contention is wholly at variance with the collective bargaining contract which governed plaintiff's employment with defendant. The very purpose of the Selective Training and Service Act was to assure a returning veteran his old job without loss of seniority. The contract between the Order of Railroad Telegraphers and the defendant carried out that purpose. In accordance with that contract plaintiff was given upon his return the very job which he held when he entered the armed forces. His seniority was kept intact and he was given the benefit of all increases in pay which had taken place while he was in the armed forces. The defendant cannot be required to give plaintiff more. Gauweiler v. Elastic Stop Nut Corporation, 3 Cir., 162 F.2d 448.

The plaintiff relies upon the cases of Fishgold v. Sullivan Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110; Randolph v. Seattle Star, D.C.Wash., 74 F.Supp. 57; and Mentzel v. Diamond, 3 Cir., 167 F.2d 299, decided by the Circuit Court of Appeals for the Third Circuit on March 16, 1948.

The Fishgold case, supra, does not support the plaintiff's contentions in this case. It denies a veteran super seniority over non-veterans and recognizes that the provisions of Section 8 of the Selective Training and Service Act with respect to seniority can, and in most cases must be implemented by a collective bargaining contract. In this case when defendant restored plaintiff to the position plaintiff held when he went into the armed forces with seniority unimpaired and with all general wage increases granted by defendant while plaintiff was serving his country, defendant fully and completely performed all obligations owed plaintiff either under the Selective Training and Service Act or the collective bargaining contract.

The Randolph case, supra, merely holds that, in calculating severance pay of a veteran, time spent in the armed forces must be counted even though the collective bargaining contract provided otherwise. In this case there is no question of a variance between the terms of the Selective Training and Service Act and the collective bargaining contract. The court specifically asked the plaintiff upon oral argument of this case to point out any provisions of the collective bargaining contract which were contrary to the provisions of the Act. The plaintiff could find none.

The Mentzel case, supra, is similar to the Randolph case, except that it involves vacation pay rather than severance pay. It establishes the principle that in calculating vacation pay under a collective bargaining contract time spent in the armed forces must be added to time actually spent on the job. There is no such contention in this case and the case is clearly not in point.

After a full consideration of the facts and the provisions of the Selective Training and Service Act, I am of the opinion that the plaintiff is not entitled to recover and a decree should be submitted accordingly.