**Woodrow W. FESSLER, Plaintiff,**

v.

**READING COMPANY, Defendant.**

**No. 10112.**

United States District Court
E. D. Pennsylvania.
Dec. 16, 1955.

---

204

W. Wilson White, Philadelphia, Pa., for plaintiff.

Miles W. Kirkpatrick, John R. Mc-Connell, Philadelphia, Pa., for defendant.

LORD, District Judge.

This action arises under the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix § 301 et seq.[1]

1. "§ 308(a) Any person inducted into the land or naval forces under this Act for training and service, who, in the judgment of those in authority over him, satisfactorily completes his period of training and service under section 3(b) * * * shall be entitled to a certificate to that effect upon the completion of such period of training and service, which shall include a record of any special proficiency or merit attained. * * *"

The following subsections (b) and (B) are quoted from the Uniform Military Training and Service Act of June 24, 1948, c. 625, 62 Stat. 604, 614, 615, 50 U.S.C.A.Appendix, § 459.

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from

Originally, plaintiff sought reinstatement and restoration to his former position in defendant's employ without loss of seniority rights, status or pay, and also compensation for damages suffered as a result of the defendant's failure to re-employ him in his former position. At the trial, plaintiff withdrew his application for reinstatement.

On March 30, 1942, the plaintiff left a position other than temporary in the employ of the Reading Company to be inducted into the armed forces of the United States. He was honorably discharged from the service on December 31, 1945; a week later he re-enlisted. At that time he made no application to the defendant for reinstatement. He was again honorably discharged November 18, 1948. On November 30, 1948 he filed an application with the Reading Company for re-employment and reinstatement to his former position. He was offered a similar position as a new man without seniority status. He refused the offer and endeavored to obtain other employment. He was unsuccessful in obtaining continuous, permanent employment and re-enlisted in the Army on August 30, 1949, where he is still serving.

The issues presented are:

1. Was plaintiff's service in the armed forces of such a continuous nature from the date of his induction in 1942 until the date of his discharge on November 18, 1948 so as to entitle him to Veteran's rights?

2. Must a Veteran accept a position from his former employer which is not of like seniority, status and pay in order to mitigate the damages?

We shall discuss them in that order.

■ 1. Defendant previously filed a motion to dismiss the complaint. The motion to dismiss was denied. Judge Ganey then held that he could not say that the hiatus between plaintiff's first discharge and his re-enlistment (from December 31, 1945 to January 7, 1946), standing alone, should be the deciding factor on the question of whether plaintiff's "chain of army service" had been broken, and that evidence could be presented to show attendant circumstances such as plaintiff's "state of mind as to remaining in the service". Defendant conceded the continued existence of re-employment rights where veterans are given discharges solely for the purpose of immediate re-enlistment, for the "convenience of the Government". The practice is to avoid physical separation from the armed forces by withholding the discharge certificate until the re-enlistment is completed. I agree with Judge Ganey's opinion that the six day's physical separation in plaintiff's case, alone, should not reasonably differentiate his legal rights from those of veterans who had received the "convenience of the Government" type of discharge. Thus, we come to the question as to whether there are any attendant circumstances showing plaintiff's firm intention to remain in the service.

Plaintiff testified that he returned from Germany to the United States on December 25, 1945. His point of return was Camp Patrick Henry, Norfolk, Virginia, "a push-over station." He could not re-enlist at this camp. Thereupon, plaintiff was transferred to Indiantown Gap in Pennsylvania. He wanted to re-enlist there, but could not do so until he was discharged. There was such a backlog of re-enlistments he would have had to stay at Indiantown Gap for approximately three days before he could re-enlist. He had not been home to his family for three years and desired to spend New Year's Day with them. Accordingly, he accepted his discharge on

---

such training and service or from hospitalization continuing after discharge for a period of not more than one year— * * *

"(B) if such position was in the employ of a private employer, such person shall—

"(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; * * *."

December 31, 1945 and returned to his home in Pottsville, Pennsylvania. On January 2, 1946 plaintiff applied for re-enlistment at the recruiting station in Pottsville, was given permission to stay with his family over the week-end, and was given a railroad ticket to Philadelphia. Plaintiff was then sworn in on January 7, 1946 at Philadelphia and served in the armed forces until November 18, 1948, at which time he was honorably discharged.

From the plaintiff's testimony, it appears that the only reason he was physically separated from the Army was because of the inability of the Army to handle his re-enlistment expeditiously. Further, the fact that he applied for re-enlistment in his home town the first day he was able to do so is indicative of his intention to remain in the service.

This Court is of the opinion that plaintiff's service in the armed forces from March 30, 1942 until November 18, 1948 was, in effect, continuous. When plaintiff applied to defendant-employer on November 30, 1948 for re-employment, he had complied with the provisions of the act requiring application for re-employment within ninety days after being released from training and service.

■ 2. Must a veteran accept a position from his former employer which is not of like seniority, status and pay in order to mitigate the damages?

Under Section 308(e) of the Selective Training and Service Act, supra, it is provided:

"(e) In case any private employer fails or refuses to comply with the provisions of subsection (b) or subsection (c), the district court of the United States for the district in which such private employer maintains a place of business shall have power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, to specifically require such employer to comply with such provisions, and, as an incident thereto, to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action. * * *"

The defendant contends that since plaintiff was offered a job as a new man he had a duty to accept it in order to mitigate the damages. It argues the measure of damages is the difference between what plaintiff would have earned had he been restored to his former position and what he would have received had he accepted the job offered.

Plaintiff testified he refused this position because he believed that if he had accepted it, he would have waived his seniority rights. He had the right to so decide. In Loeb v. Kivo, 2 Cir., 1948, 169 F.2d 346, at page 350, the court said:

"* * * If on the one hand a veteran is required to mitigate damages and then on the other he loses his rights under the statute because of compliance with this duty, the benefits of the statute became merely illusory. * * *"

Further, in Feore v. North Shore Bus Co., Inc., D.C.E.D.N.Y.1946, 68 F.Supp. 1014, a veteran was offered a position in which he would have earned wages equal to that which he would have received had he been restored to his former position. The court held the veteran had no duty to mitigate damages in this manner. The case was reversed but on other grounds, 2 Cir., 1947, 161 F.2d 552.

It is clear that the intent of Congress in passing the Selective Training and Service Act of 1940, supra, was to restore to anyone who had left his employment to enter the military service the same status that he had prior to enlistment or induction. If defendant's contention is correct, the effect would be to require a veteran to accept a position which is less than the position to which he is entitled under the law. The plaintiff was justified in refusing such an offer. To decide otherwise would negate the purpose of the Act.

■■ It is well settled that a court may grant damages because of the re-

fusal of the employer to restore the veteran to his former position. Bochterle v. Albert Robbins, Inc., 3 Cir., 1947, 165 F.2d 942. Accordingly, the plaintiff is entitled to damages for the period of one year from November 30, 1948. Van Doren v. Van Doren Laundry Service, Inc., 3 Cir., 1947, 162 F.2d 1007.

This amount should be reduced by wages earned by the plaintiff during that year when he, in good faith, sought to obtain other employment. Since the record is not clear as to the exact amounts received and is resolved by a simple mathematical computation, the net sum shall be computed by the parties.

The foregoing findings of fact and conclusions of law embodied in this opinion may be taken as the Findings of Fact and Conclusions of Law of the Court.

An appropriate order may be submitted.