Harold B. WRIGHT, Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

Civ. No. 20964.

United States District Court
E. D. Michigan, S. D.

Aug. 21, 1961.

Willis Ward, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

William T. Gossett, Dearborn, Mich., for defendant.

KAESS, District Judge.

This controversy is brought before this court more than fifteen years after its inception. On March 21, 1946 defendant rehired plaintiff in a position which, it is alleged, violated the reemployment rights of the plaintiff under the Selective Training and Service Act, 50 U.S.C.A. Appendix, § 308(b). At the trial defendant, in addition to the substantive issues, asserted that, as might be expected, this case was barred by laches and also by an arbitration decision rendered September 30, 1955, which was adverse to the plaintiff's position.

The facts in this case are relatively simple and the parties have, in the main, stipulated to them. Plaintiff was hired on September 18, 1940 as a "Stock Crib Man" at defendant's plant in Highland Park, Michigan. On March 25, 1942 he was classified as a "Tool Crib Attendant". On May 1, 1942 plaintiff was classified as a "Lathe Hand", but on September 16, 1942 he left defendant's employ to enter military service. After an honorable discharge, plaintiff applied for reinstatement and on March 21, 1946 was reemployed as a "General Tool Crib Attendant", with his prior seniority on that classification. This classification corresponded to the one he had possessed from March 25, 1942 to May 1, 1942.

The collective bargaining agreement between defendant and the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, commonly referred to as the UAW, relating to plaintiff's employment, had at all pertinent times the following provision:

"An employee who has been transferred from one seniority unit to another for a period of less than six (6) months, shall be considered a temporary employee in his new unit and he shall not accumulate any seniority in his new unit, but his seniority shall be added to the seniority he has in the old unit."

The "Lathe Hand" classification, on which plaintiff was employed for approximately four and one-half months prior to leaving for military service, was in a different seniority unit than the crib attendant classifications on which he held his seniority.

Notwithstanding the above provision of the collective bargaining agreement, the parties agree that defendant generally reinstated returning servicemen to the classification on which they last worked, even though they had been temporarily employed on such classification at the time they had left to enter military service.

Plaintiff challenged his reemployment classification on June 6, 1947, stating that he would like to have seniority status as an "Upgrader Lathe Operator". The defendant's reply, dated June 12, 1947, stated that plaintiff did not spend six months on a lathe operating classification and that, therefore, he had no seniority as an Upgrader Lathe Operator.

The next attempt to assert the higher classification was dated January 29, 1954, six and one-half years later. After this too was denied, plaintiff signed and filed in November 1954 a grievance, which was allowed by plaintiff to go to final arbitration as provided in the collective bargaining agreement then in effect. The arbitration decision, dated September 30, 1955 is as follows:

"The evidence shows that the aggrieved requested seniority status as an Upgrader Lathe Operator on June 6, 1947. This request was denied on its merits on June 12, 1947. The matter was then dropped until it was raised by the instant grievance on November 16, 1954. An indication that the 1947 determination was accepted as final is that the aggrieved has not worked as a Lathe Man since he was reinstated as a Tool Crib Attendant upon his return from military service on March 21, 1946. Further, the evidence does not show that his seniority ever was carried as a Lathe Man. Finally, the record shows that in 1947 Wright had full knowledge that he did not have seniority in the 'Lathe-General' classification. Therefore, the protest filed at this late date, in any event, is untimely.

"In view of all the foregoing the appeal must be denied."

Plaintiff then submitted his claim to the United States Bureau of Reemployment Rights in October 1958 and this law suit was commenced March 2, 1961. In this case plaintiff seeks only a determination of his seniority rights and does not ask for damages or back pay.

The first hurdle that must be faced in this case is whether plaintiff waived his cause of action by submitting his claim to arbitration. We think he has.

A word about reemployment rights might be in order at this point. 50 U.S.C.A.Appendix, Sec. 308(b), which is now covered by Sec. 459(b) of the same volume, reads in part:

"(b) In the case of any such person who, in order to perform such (military) training and service, has left or leaves a position, (other than a temporary position) in the employ of any employer * * * (B) if such position was in the employ of a private employer, such employer

shall restore such person to such position or to a position of like seniority, status, and pay * * *."

By using such words as "temporary position" and "seniority", the rights created by this statute were evidently to be interpreted in relation to a collective bargaining agreement, if one was in existence. A seniority system was not created by the statute, but if there was one in the collective bargaining agreement, then the statute allowed the veteran to step back at the precise point he would have occupied had he kept his position continuously during the war. See Fishgold v. Sullivan Drydock and Repair Corp., 1946, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230.

Thus it is clear that there is no separate "statutory right", as distinguished from a "contract right", as plaintiff claims. Both the statute and the collective bargaining agreement are intertwined and depend and rely upon one another. They are fused together and become one. That this was recognized by defendant is clear since the collective bargaining agreement between the UAW and defendant dated November 4, 1942 stated, in paragraph 74:

"Any employee actively serving in the armed forces of the United States or absent because of enforced military training shall not lose his seniority status, but upon termination of such service shall be reemployed by the Company *in accord with the present provisions of the Selective Service Act.* * * *." (Emphasis added.)

Although this right may be waived, it has been said that such waiver must be "clearly and unequivocally indicated", that he was aware of his rights and that he fully intended to abandon them. Loeb v. Kivo, 2 Cir., 1948, 169 F.2d 346. A provision in the collective bargaining agreement in Section 24 of Article VII, which defendant claims constitutes such a waiver, states:

"There shall be no appeal from an Umpire's decision. It shall be final and binding on the Union, its members, the employee or employees involved and the company * * *"

An employee is certainly not required to pursue remedies under a grievance procedure before he can bring action in District Court on his reemployment rights. McKinney v. Missouri-Kansas-Texas Railroad Co., 1958, 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1304. However once a controversy is submitted to arbitration, it has become the policy of the United States that the decision will be final. United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

In the Enterprise case, an arbitration award was attacked on the basis that it involved, in part, a period not covered by the collective bargaining agreement and thus exceeded the arbitrator's authority. The court declined to consider the case, stating at page 596 of 363 U.S., at page 1360 of 80 S.Ct:

"The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards."

Likewise in this case, since plaintiff consented to arbitration on his reemployment rights, knowing he could not contest that decision, he has effectively waived his cause of action. Mraz v. Presto Lock Co. (D.C.N.J.1947), 20 LR RM 2503. The merits of that arbitration decision, therefore, cannot be considered by this court in this matter.

Since our decision on this issue is dispositive of the entire case, we will not discuss the other issues raised by the parties.

Judgment may be entered for defendant.