Harry W. SMITH, Appellant,

v.

MISSOURI PACIFIC TRANSPORTA-
TION COMPANY, Appellee.

No. 17031.

United States Court of Appeals
Eighth Circuit.

Feb. 7, 1963.

———◆———

Carrold E. Ray, Marianna, Ark., for
appellant.

Herschel H. Friday, Jr., Little Rock,
Ark., for appellee; Pat Mehaffy, Little
Rock, Ark., with him on the brief.

Before SANBORN and BLACKMUN,
Circuit Judges, and REGISTER, District
Judge.

BLACKMUN, Circuit Judge.

By this action Harry W. Smith, a re-
tired army colonel born 8 December
1892, seeks reinstatement in his civilian
employment with the defendant and
damages for salary loss. He bases his
claim, in the alternative, on § 9(g) (1)
and (2) of the Universal Military Train-
ing and Service Act, adopted in 1948, 62
Stat. 604, 614, 50 U.S.C.App. § 459(g)
(1) and (2),[1] and on § 8 of the earlier

1. § 459. "(g) (1). Any person who, sub-
sequent to June 24, 1948, enlists in the
Armed Forces of the United States (other
than in a reserve component) and who
serves for not more than four years
(plus any period of additional service im-
posed pursuant to law) shall be entitled
upon release from service under honor-
able conditions to all the reemployment
rights and other benefits provided for
by this section in the case of persons in-
ducted under the provisions of this title.

"(2) Any person who, subsequent to
June 24, 1948, enters upon active duty
(other than for the purpose of deter-
mining his physical fitness), whether or
not voluntarily, in the Armed Forces of
the United States * * * in response
to an order or call to active duty shall,
upon his relief from active duty under
honorable conditions, be entitled to all
of the reemployment rights and benefits
provided by this section in the case of
persons inducted under the provisions of

Selective Training and Service Act of 1940,[2] 54 Stat. 885, 890. The case was tried to the court and resulted in a judgment for the defendant. D.C., 208 F. Supp. 767.

When Smith entered service in 1942 he was in the defendant motor carrier's employ, in a position other than temporary, as its district supervisor at Little Rock, Arkansas. That employment was the usual one terminable at will. The enterprise in which the defendant was then engaged had originated with the plaintiff and his father and had been purchased from them. Upon the plaintiff's emergence from service in 1953 he received the usual certificate of satisfactory completion and promptly applied to the defendant for his old position or one equivalent to it. After investigation this was denied.

A chronological statement will perhaps be helpful:

1. Before World War II. The plaintiff entered military service in June 1916 and remained on active duty until March 1917. Thereafter he continuously maintained a connection with the Arkansas National Guard until December 1940. He attained the rank of Lieutenant Colonel. With war approaching, guard activities increased. This interfered with the plaintiff's work for the defendant and he resigned his guard commission.

2. July 1942. Plaintiff left the employ of the defendant and entered upon active duty with the temporary rank of Captain in the Army of the United States.

3. 8 July 1947. Plaintiff received an appointment as Lieutenant Colonel. This came as a result of his making application under War Department Circular No. 97, 1947. In the application he stated that his category was "1", indicating a one-year term of duty.

4. 3 February 1948. Department of the Army Circular No. 27 was issued. The Circular offered new category commitments for extended terms of service of 1, 2 or 3 years to officers who met stated age-in-grade requirements. The plaintiff at that time held the rank of Major and, being then 55 years old, did not meet the age-in-grade specification. Had he been eligible, a three-year commitment under the Circular would, by its terms and because plaintiff's birthday was in December, have expired 31 December 1951.

5. 23 June 1948. The age requirements of Circular 27 were rescinded by Army Message. This said, "The DA

---

this title, if he is relieved from active duty not later than four years after the date of entering upon active duty or as soon after the expiration of such four years as he is able to obtain orders relieving him from active duty."

The foregoing is the form of the statute as it existed when the present action was instituted in 1956. Section 459(g) (2) was amended in a minor particular, not of significance here, in 1960. 74 Stat. 467. Both (1) and (2) were amended in 1961, 75 Stat. 821, to permit an additional four years' service after August 1, 1961, without loss of reemployment rights and to include the phrase "after entering the employment to which he claims restoration".

**2.** § 8. "(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still

qualified to perform the duties of such position, and (3) makes application for reemployment within forty days after he is relieved from such training and service—

\* \* \* \* \*

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

\* \* \* \* \*

"(c) Any person who is restored \* \* \* shall not be discharged from such position without cause within one year after such restoration."

The foregoing is the section as it read in the original 1940 Act. It was thereafter amended. It now has counterparts in § 9(b) of the 1948 Act, 50 U.S.C.App. § 459(b).

intends to retain on AD all officers under age 60 who desire to remain on AD, are qualified to sign a new category statement and whose retention is approved * * * ". It thus authorized the retention on active duty of qualified officers whose requested category could be completed before attaining age 60. With exceptions not applicable here an officer then under age 57, as was the plaintiff, could apply only for Category III, a term expiring 30 June 1951.

6. 7 July 1948. The plaintiff submitted to his commanding general a formal communication in which he stated, "I hereby volunteer for Category III (3 years) for continued extended active duty". The letter recited that it was submitted in accordance with Circular 27, as amended.

7. 9 July 1948. This commitment by the plaintiff was approved. Because of an unexplained administrative error within the Department of the Army, the official records as to the expiration date for plaintiff's commitment show 31 December 1951 rather than 30 June 1951. The Department has indicated that the plaintiff should not be held responsible for this change in the records "since there is no evidence in this office that he voluntarily requested retention until that date".

8. 11 August 1950. The Department of the Army issued General Orders No. 27 applicable to non-regular officers serving on extended active duty expiring before 8 July 1951. It continued the tour of duty for 21 months from the date it would otherwise have expired.

9. 9 May 1951. The plaintiff, in a letter directed to his commanding general, stated that "the undersigned desires to serve on extended active duty in Category V, to be effective 1 January 1952, and expiring indefinitely. My present category expires 31 December 1951".

10. 7 July 1951. The Department of the Army issued General Orders No. 48. This amended General Orders No. 27, 1950, referred to above, to replace the 21-month extension with one for 12 months. It also extended for 12 months the tour of duty of any officer which was to expire after 8 July 1951 and before 30 June 1952.

11. 19 November 1951. The plaintiff submitted to his commanding general a statement reciting, "the undersigned desires to serve on extended active duty in Category I, to be effective 1 December 1951 and expiring 31 December 1952". This was approved. The Department later indicated that, had the plaintiff not filed this request for a voluntary category, he would have been retained on involuntary duty anyway until 31 December 1952.

12. 8 December 1952. The plaintiff attained age 60.

13. 23 December 1952. The plaintiff was ordered hospitalized for surgery.

14. 31 March 1953. The plaintiff was released from service.

Colonel Smith testified that his military duties at all times were in Ordnance; that he saw service in the Middle East, in Korea, in Washington, D. C., and elsewhere; that from 1948 until his release he corresponded with the defendant; that their relationship was always cordial; that they would ask when he would return; that he talked with representatives of the defendant in April 1953; that they then gave him a railroad pass to visit his daughter and grandchildren in Texas; that in May he was asked to bring his military records to St. Louis for their examination; that in July he was told that if he did return he would have to bump the then district supervisor; that he told them they could find something else for him to do; that he also told them he would go any place they chose to send him; that he was aware of his reemployment rights and of the 4-year voluntary service limitation; that he actively sought to get out of service; that it was difficult to find his replacement in service; that everyone had "these requests for various categories" handed to him; that "the categories that were given to us to sign were routine"; that "I was given a blank to fill out and sign because we had to

have another category"; that "there was only one that I understood thoroughly about"; that he did not deny that he read the forms; that he has drawn retirement military pay since 1 April 1953; that, however, he has not drawn any railroad retirement compensation; that with proper cooperation he would be at home on his old job within a 30 day period; and that he was very reluctant to displace the present district supervisor.

It is apparent from all this (a) that plaintiff was in military service continuously from July 1942 through March 1953, a period of approximately 10 years plus 8 months; (b) that under the terms of Circular No. 27, prior to its amendment, plaintiff, because of his age, was not eligible to convert to a new category from the one he was holding; (c) that his tour of duty then would have terminated in due course in 1948; (d) that the June 1948 amendment to the Circular made it possible for the plaintiff to apply for an extended term expiring 30 June 1951; (e) that he did so apply and his application was approved; and (f) that the plaintiff in 1951 twice asked voluntarily for extended duty and was accepted.

Chief Judge Henley found as facts, p. 772 of 208 F.Supp., that the commitments the plaintiff executed "were voluntary and were made with full understanding of his legal rights"; that, "In the Court's estimation plaintiff enjoyed the military life and intended to remain on active duty as long as he might be able to do so"; and that his "plans to go back to work for the defendant were entirely contingent upon his not being able to remain in active military service".

The court then ruled (1) that § 459(g) (1) of the 1948 Act has no application to the plaintiff because he never "enlisted" in the armed forces; (2) that § 459 (g) (2) of the same Act has no application to the plaintiff because, as he was already in service when he executed his commitment of 7 July 1948 and was free to sign or reject that commitment at that time, he was not a person who, after June 24 of that year, "enters upon active duty * * * in response to an order or call to active duty,"; and (3) that by his long stay in the Army plaintiff waived any reemployment rights he may have had under either the 1940 Act or under any other provision of the 1948 Act.

The court also concluded that an alternative contention advanced by the defendant, namely, that plaintiff's long absence, the interim changes in the transportation industry, and the unavailability of a comparable position made it unreasonable and impractical to require defendant to reinstate him, was not persuasive and constituted no defense. In addition, the court intimated that, although he did not need to rule finally on the question, it was probable that plaintiff's 1948 commitment terminated only on 31 December 1951 rather than on 30 June 1951; that this plaintiff would have been held in service anyway by the General Orders above described until 31 December 1952; and that the 3 months in 1953 were an involuntary period.

The plaintiff expectedly presents to this court the same arguments which were unavailing in the trial court. Much of his concern rests, we suspect, in his feeling that he did "enter" service again in 1948 when he executed his voluntary commitment. He argues that the fact his anticipated 30 June 1951 termination date was recorded as 31 December 1951 in official records was not of his doing and was something he could no nothing about; that his request of 9 May 1951 for a category with indefinite expiration indicated his desire to be released at the earliest opportunity; that he would have been retained on active duty throughout 1952 in any event because of the two General Orders; that, as a consequence, his requests of 9 May 1951 and 19 November 1951 were meaningless; and that his service beyond 31 December 1952 was involuntary because of his hospitalization. Thus, accepting the proposition that there was an entry upon active duty in July 1948, plaintiff asserts that he was released "as soon after the expiration of such four years as he is able

to obtain orders relieving him" and that § 459(g) (2) of the 1948 Act has direct and favorable application to him.

The plaintiff also urges that the 1940 Act contained no stated upper limit of service time as a condition for enjoying reemployment benefits; that the trial court wrote a non-existent limitation period into the Act; that, if Congress had intended this, it would have said so specifically as it did with the 1948 Act; that the defendant has admitted that Colonel Smith made an "entry" into service after 24 June 1948; and that it is not necessary, as the trial court held, that such an entry be pursuant to "an order or call".

Despite these arguments we fail to see how we can arrive at any other conclusions than the ones reached by Judge Henley.

■ General principles. The service acts are to be liberally construed. Fishgold v. Sullivan Drydock & Repair Corp., 1946, 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230; Rix v. Turnbull-Novak, Inc., 8 Cir., 1958, 260 F.2d 785, 789. But they are not unlimited in their granting of rights to men coming out of service. See, for example, McKinney v. Missouri-Kansas-Texas R. R., 1958, 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305; Sularz v. Minneapolis, St. P. & S. S. M. R. R., 8 Cir., 1958, 259 F.2d 122; Tilton v. Missouri Pac. R. R., 8 Cir., 1962, 306 F. 2d 870, cert. granted 83 S.Ct. 722; Missouri Pac. R. R. v. Brooks, 8 Cir., 1962, 308 F.2d 531, cert. granted 83 S.Ct. 730. And the plaintiff has the burden of establishing his cause of action. Rix v. Turnbull-Novak, Inc., supra, p. 789 of 260 F.2d.

■ It has been held that a waiver by a veteran of his statutory reemployment rights must be clearly and unequivocally indicated. Loeb v. Kivo, 2 Cir., 1948, 169 F.2d 346, 349, cert. den. 335 U.S. 891, 69 S.Ct. 246, 93 L.Ed. 429; Wright v. Ford Motor Co., E.D.Mich., 1961, 196 F.Supp. 538, 540; Niemiec v. Seattle Rainier Baseball Club, W.D.Wash., 1946, 67 F.Supp. 705, 709. But the authorities do disclose instances of waiver. Carmalt v. General Motors Acceptance Corp., 3 Cir., 1962, 302 F.2d 589 (where veteran said "all right" when told he could not be reemployed and then accepted other work); Hastings v. Reynolds Metals Co., 7 Cir., 1947, 165 F.2d 484, 487 (new contract of employment with employer); Wright v. Ford Motor Co., supra (consent to arbitration); Walsh v. Chicago Bridge & Iron Co., N. D.Ill., 1949, 90 F.Supp. 322 (acceptance of employment in defendant's other division). Waiver has been grounded in delay and laches. Leonick v. Jones & Laughlin Steel Corp., 2 Cir., 1958, 258 F.2d 48; Delman v. Federal Products Corp., 1 Cir., 1958, 251 F.2d 123; Donner v. Levine, 2 Cir., 1956, 232 F.2d 185, 188; Cummings v. Hubbell, W.D. Pa., 1948, 76 F.Supp. 453, 456; Hicks v. United States Radiator Co., E.D.Mich., 1955, 127 F.Supp. 429; Lacek v. Peoples Laundry Co., M.D.Pa., 1950, 94 F.Supp. 399, 402; Marque v. Stern, M.D.Pa., 1950, 88 F.Supp. 306, 309; Polansky v. Elastic Stop Nut Corp., D.N.J., 1948, 78 F.Supp. 74, 77; Daniels v. Barfield, E. D.Pa., 1948, 77 F.Supp. 283, 285. It is true that none of these cases involved a situation of alleged waiver through voluntary extensions of service activity. They do illustrate, however, that the courts have not been averse to declaring forfeited by one kind of action or another the reemployment rights a man in service would otherwise have.

■ With these principles in mind we turn to the several points which comprise plaintiff's attack upon the decision below.

1. The Findings. We have no difficulty in sustaining the trial court's findings as to the plaintiff's voluntary execution of his commitments, as to his intention to remain in service as long as possible, and as to his return to civilian employment being dependent upon his inability to remain in service. The plaintiff urges that there was no substantial evidence of his subjective intent to waive reemployment rights. In support of this he stresses his maintenance of con-

tact with the defendant during service, his continued awareness of his rights, his retirement from the Guard when it interfered with his work, his subsequent entry into wartime service at the lower rank of captain, and his already having accumulated 35 years of military contact. But the plaintiff conceded on cross-examination that he had read the commitments he was signing and that he understood them. His years of experience with military routine and his long possession of substantial rank attest to this. Further, in July 1947 he applied for a one-year term and a lieutenant colonelcy; in July 1948 he volunteered his 3-year commitment; and in 1951 he twice sought service extensions. These steps are not inconsistent with an intent to prolong active duty and to defer his release. All this lends adequate support to the trial court's findings.

2. § 459 of the 1948 Act. There is little we can add to Judge Henley's able decisional analysis on pp. 770–772 of 208 F.Supp. Surely Colonel Smith, being an officer and of high rank, effected no enlistment in July 1948 and, if he did not, § 459(g) (1) obviously has no application to him. Equally certain is the inapplicability of § 459(g) (2). This plaintiff, in executing his July 1948 commitment, was not a person who thereby "enters upon active duty". He was already there.

The plaintiff's argument that the defendant by its admissions has conceded that he is entitled to the protection of § 459(g) (2) rests upon a phrase in the defendant's answer, setting forth an alternative defense, to the effect that plaintiff "voluntarily served more than four years after his entry (or re-entry) upon active duty subsequent to June 24, 1948", and upon statements in correspondence, and is said to be consistent with other statements in a Department of Labor question and answer handbook issued in July 1952.

So far as the answer is concerned, we note that the issue definitely was before the trial court. We then must conclude that that court regarded the answer as appropriately amended, if this was necessary at all, to raise the issue. Rule 15(b), F.R.Civ.P.

We do not regard the comments in the correspondence as possessed of sufficient certainty to constitute formal admissions. At most they go only to the weight of the evidence and do not effect a binding commitment on the part of the defendant. We observe in this connection that the record discloses a substantial amount of correspondence between representatives of the defendant, the office of the United States Attorney which represented the plaintiff in the trial court, the field representative of the Bureau of Veterans' Reemployment Rights and the Solicitor of the United States Department of Labor. This correspondence does not show pre-trial consistency in attitude in any of these parties. It actually discloses that the United States Attorney's office, the field representative, and the Solicitor all took the position at one time or another that protection afforded by the 1948 Act was not available to this plaintiff. So the admission approach cuts both ways.

3. The 1940 Act. We are in agreement also with Judge Henley's waiver conclusions with respect to § 8(b) of the 1940 Act and its general counterpart in § 9(b) of the 1948 Act. We are persuaded as to this by much the same observations the Judge made, namely, (a) that had plaintiff failed to sign the 1948 commitment he would have been separated after about six years of service, a comparatively short time; (b) that Congress did not desire to extend the protection which the Act afforded persons entering service on what was essentially a temporary basis to include those who deliberately elected not to separate from service; (c) that this is shown by the very time limitations in § 459(g); (d) that the commitments and requests signed by the Colonel were executed voluntarily; (e) that this is of significance despite whatever effect the General Orders may have had; (f) that he signed and presented those commitments with understanding of his legal rights; (g) that

he obviously had a basic interest in the military life and was content to remain on active duty as long as he could; (h) that "employers as well as servicemen have rights"; and (i) that among these is the right to expect an employee who has entered military service, if he intends to invoke the reemployment benefits statutorily provided, to "separate himself from the service as soon as he can do so legally and honorably".

4. The plaintiff brings to our attention the two district court cases of White v. Boston & M. R. R., D.Mass., 1948, 79 F.Supp. 85, and Fessler v. Reading Co., E.D.Pa., 1955, 138 F.Supp. 203. It is said that these, while concerning enlisted men rather than officers, indicate that a voluntary additional term does not destroy or mitigate against reemployment rights and that reenlistment equates with original enlistment. Some support for this view is perhaps to be gleaned from these cases. Thus, in White it was said, p. 87 of 79 F.Supp., "There is nothing in [the statute's] language to show that Congress meant to discriminate in any manner between persons enlisting for the first or second time * * *". But White involved a reenlistment only after an intervening six month period of civilian reemployment. The argument then became directed toward the claimed limitation of the Act's benefits to the first separate service period. Fessler went off on the question of timeliness of the veteran's application for reemployment. He had been inducted in 1942 and discharged at the end of 1945. One week later he reenlisted and was again discharged in 1948. He then promptly applied for reemployment. The court held that, under the circumstances of that case (a desire to visit his family over New Year's; delay in granting convenience-of-the-government discharges; and application on the first possible day), the veteran's service from 1942 to 1948 was in effect continuous. The fact that the defendant there "conceded the continued existence of reemployment rights where veterans are given discharges solely for the purpose of immediate re-enlist-

ment, for the 'convenience of the Government' " destroys the force of the case so far as the present plaintiff is concerned. Furthermore, both of these cases concern one extended term and do not present a situation, as does the present one, of several voluntary commitments for additional service. We therefore conclude that these cases, interesting as they are, do not constitute very positive authority for the plaintiff's position here.

5. Both parties refer to the legislative history. We have reviewed this but find nothing of helpful significance. Congress was obviously aware, when the 1948 Act was adopted, that the 1940 Act did not contain specific time limits similar to those in § 459(g) of the later legislation. United States Code Congressional and Administrative News, Vol. 2, 80th Cong., 2d Sess., 1948, pp. 2003–2005. But we find nothing in the report which contraindicates the possibility of waiver of rights under the 1940 Act, which assures reemployment for an indefinite term, however long extended by voluntary action, or which affords protection under every circumstance.

This conclusion makes it unnecessary for us to pass upon and construe the seeming inconsistency of the words "whether or not voluntarily", added to § 459(g) (2) of the 1948 Act by the Act of June 19, 1951, § 1(s), 65 Stat. 75, 86, with the continued retention of the phrase "in response to an order or call to active duty". It is also unnecessary to pass upon the question whether the intervening years have brought such a change in the defendant's circumstances as to make its reemployment of the plaintiff unreasonable.

In summary, we feel that the plaintiff's claim of protection under the facts of this case asserts too much and goes too far. To render a decision in favor of this plaintiff would be to recognize and to vest in one in his posture the power, step by step, as extension-of-duty opportunities present themselves, in effect to make a career of the service and at the same time to force his civilian employer to hold or to make a place available for

him throughout the career period and until such time as he chooses to bring his military life to an end or until it is finally terminated for him because of age, physical disability, or the like. This, we think, was not the intent of Congress. Appropriate civilian reemployment protection at the end of a non-career period of service was what our national legislative body had in mind.

Affirmed.